CHARLES F. STANLEY, APPELLEE, V. ANDREW HERMANSON, APPELLANT.

FILED MARCH 24, 1911.   No. 16,367.

1. Boundaries: LOCATION. If the location of section and quarter section corners as established by the government surveyors can be ascertained, those corners will control the boundary between coterminous quarter sections of land.

2. ——: ——. If the government corners are obliterated and their location cannot be established by witnesses who know the site thereof, other competent evidence relevant to the issue may be considered.

3. ——: ——. In that event, in establishing a boundary between coterminous quarter sections within the interior of a township, surveys according to the government field notes from known government corners, both north and south and east and west of the corner in dispute, so as to locate the contested corner on a line with other corners on both of those lines and to give each owner an equal amount of land, should ordinarily be preferred to a survey which does not commence at a known or conceded government corner and gives to one owner much more land than is accorded the other.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*L. H. Blackledge,* for appellant.

*A. H. Byrum, contra.*

ROOT, J.

The plaintiff is the owner of the northeast quarter of section 27 and the defendant owns the northwest quarter of section 26 in the same town and range, so that the eastern boundary of the plaintiff's tract is the western boundary of the defendant's land. This action is in equity to enjoin the defendant from destroying a fence constructed by the plaintiff upon what he contends is that boundary. The defendant also prays for affirmative relief and for damages for the destruction of his fence by the plaintiff. The defendant demanded and was given a jury trial upon the issue of fact as to the location of the boundary in dispute. The jury and the court found in the plaintiff's favor, and from the judgment rendered the defendant appeals.

As we view the record, there is one controlling issue to be determined, and that is whether the evidence sustains the jury's special finding that the "Hussong," and not the "Ashby" or the "Sutton," survey corresponds with the government survey of the north and south line between these sections. Surveys were made in the neighborhood of this land in 1883 by Mr. Sutton, in 1892 by Mr. Houtz, in 1895 by Mr. Sutton, and in 1900 and 1901 by Mr. Ashby. Each of these surveyors at the time of his survey was county surveyor of Franklin county. The record of these surveys in evidence is far from perfect, in that in some instances the field notes were not recorded, and in no case can we ascertain the method used to determine the initial station. In April, 1905, in October, 1907, and in November, 1907, Mr. Hussong, the county sur-

veyor, also surveyed the line in question. The record of these surveys is not in evidence, but Mr. Hussong testified from his field notes. During the time this suit was pending in the district court, Messrs. Obering and Mc-Reynolds, county surveyors of Webster and Nuckolls counties, respectively, surveyed the disputed boundary, and their testimony is in the record. Some 14 witnesses, other than the litigants and the surveyors, also testified.

The township wherein the litigants' farms lie was surveyed by the government in 1863. It appears from the recitals in the field notes of this survey that the government surveyors set a limestone at the quarter corner between sections 34 and 35, one mile south of the southern end of the disputed boundary, a like stone at the northwest corner of section 35, one-half mile north of the first monument, and a limestone at the quarter corner between sections 2 and 3, three and a half miles north of the northern end of the disputed boundary. According to the field notes, each intermediate quarter section and section corner was marked by pits, a mound, and a charred stake. It seems to be conceded that the government corner between sections 34 and 35 and in the township line is visible, and was used by the respective surveyors in running their lines. The government stone at the northwest corner of section 35 seems to have disappeared, and the point where it was set is not satisfactorily established by the evidence. Hussong is the only witness who testified to having advised himself by reference to the government field notes before commencing his survey. The testimony with reference to the so-called government corners does not refer to their physical characteristics, whether pits or mounds were visible, or the relation the pits bore to each other or to the elevation of the mounds, nor is any reference made to a charred post or other like evidence of the attempt of the government surveyors to perpetuate the corners. The line north and south across the township is over rough territory and the soil is sandy; some parts of it are described in the government field notes as

"worthless." The government field notes of the survey across the north side of sections 34, 35, 26, 27, 22 and 23 are not in evidence, but it does appear from measurements made that, if the Hussong survey shall be accepted as accurate, the length of the northern boundary of section 26 will be equal to the like boundary of section 27, whereas if the Sutton or Ashby surveys, the line surveyed by Obering and McReynolds or the line contended for by the defendant is adopted as coincident with the government survey, the distance across the northern side of section 26 will be greater by some 16 rods than the distance across the northern side of section 27. No such discrepancy should appear in the lines of the interior sections of a township, and, unless it clearly appears that a mistake was made by the government in surveying its land, the court should not adopt those lines as correct. The evidence does not establish the government corner at the northwest corner of section 26 by reference to any monument, but the corner must be located by a process of deduction from other facts which are to be ascertained from a consideration of conflicting evidence.

The Ashby and Sutton surveys are supported by the testimony of Frank Chagnon, who in 1882 homesteaded the southwest quarter of section 14. He contends that at that time a government corner was visible at the southwest corner of his homestead, and that it was evidenced by a stone and a stake. The witness does not refer to pits or mounds at this corner, nor to the character of the stake to which he testifies. According to the field notes, the government surveyor did not deposit a stone at this corner, nor does it appear by whose hand this monument was erected. If it is adopted as correct, the effect will be to extend the southern line of section 14 about 16 rods beyond a mile. There is no proof of a survey by a county surveyor so early as 1882, the patents for the respective quarter sections were not introduced in evidence, the litigants have not produced the plat prepared by the surveyor general of the survey of this township, and it seems

unreasonable to presume that the government surveyors in establishing the corners of these interior sections should err so grossly as they did if the Sutton-Ashby surveys coincide with the government survey. There is some evidence that by repeated and extended surveys Mr. Ashby satisfied himself that the Chagnon corner was correct, but it seems to us that the evidence preponderates in favor of a finding that the Chagnon corner is not in line with the known government corners to the north and the south in that township. Of course, wherever the government corners were established, there they must abide, but in the instant case the proof does not show the existence of those monuments at any point along the disputed boundary. It therefore becomes necessary to establish, as near as may be from all the proof before us, the points where those monuments were located. Those corners cannot be located to an absolute certainty, but approximately they can be. A consideration of all of the evidence convinces us that the jury and the district court in finding in favor of the Hussong survey were as near right as it is possible to find from the mass of evidence in the case. At any rate, this survey locates the boundary in line with the government quarter corner to the north and the like corner to the south, where the stones planted by the government surveyors have remained undisturbed, and accords to each coterminous owner practically an equal area in their respective quarter sections. It is difficult to convince the understanding that either litigant should receive more or less. *Woods v. West,* 40 Neb. 307.

The judgment of the district court, therefore, is

AFFIRMED.