(September 14, 1912.)

## CHARLES T. CRAVEN, Appellant, v. W. A. LESH, Respondent.

[126 Pac. 774.]

REAL ESTATE—QUIETING TITLE—UNITED STATES GOVERNMENT SURVEY—OBLITERATED CORNER—LOST CORNER—ESTABLISHMENT OF CORNER—EVIDENCE—SUFFICIENCY OF—ADVERSE POSSESSION.

(Syllabus by the court.)

1. Sec. 2095, Rev. Codes, prescribes the method of restoration of lost or obliterated corners and subdivisions of sections of land.

2. Sec. 2 of a circular of the United States general land office, relative to the restoration of lost or obliterated corners, defines an obliterated corner as one where no visible evidence remains of the work of the original surveyor in establishing it; and defines a lost corner as one, the position of which cannot be determined beyond reasonable doubt, either from original or reliable marks or reliable external evidence.

3. *Held,* under the evidence that the corner in question was an obliterated corner and not a lost corner.

4. *Held,* under the evidence that the defendant had been in adverse possession of the land in dispute for more than five years immediately preceding the trial of the action and had paid all taxes legally assessed against the same.

5. *Held,* that the court did not err in quieting the title to said land in the defendant.

APPEAL from the District Court of the Seventh Judicial District for Washington County. Hon. Carl A. Davis, Judge.

Action to quiet title to real estate. Judgment for defendant. *Affirmed.*

J. L. Richards, for Appellant.

If the site of the location of a government quarter section or section post which has disappeared can be established by clear and satisfactory evidence, it will control and govern as fully as if the original post remained. (*Beltz v. Mathiowitz,* 72 Minn. 443, 75 N. W. 699.)

Evidence of a supposed monument marking an original government corner is not controlling, where it is not shown that it is in fact a government corner. (*Quinn v. Monona County,* 140 Iowa, 105, 117 N. W. 1100.)

Before the existence or location of the old fence can become probative, it must be shown that it was built to or in line with the original government monuments.

The mere existence of a fence between adjoining land owners is not of itself sufficient to establish the line between them. (5 Cyc. 941, and cases cited.)

Ed. R. Coulter, for Respondent.

The evidence was sufficient to show that the fence was in fact the correct line between the lots in question. (*Brown v. Brown,* 18 Ida. 356, 110 Pac. 269; *Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066.)

The facts as to possession, cultivation and payment of taxes by respondent bring him within the rule laid down in *Bayhouse v. Urquides, supra; Price v. De Reys,* 161 Cal. 484, 119 Pac. 893; *Taylor v. Reising,* 13 Ida. 226, 89 Pac. 943; *Bradley v. Johnson,* 11 Ida. 689, 83 Pac. 927.

SULLIVAN, J.—This is an action to quiet title to a strip of land bordering on the side of the southeast quarter of the southeast quarter of section 36, township 10 north, of range 5 west of Boise meridian, in Washington county. Said strip of land is eighteen feet in width at the east end and commences at the southeast corner of said forty-acre tract and extends west about a thousand feet to the east

line of the Oregon Short Line right of way, where said strip of land is twenty-five feet in width. Both plaintiff and defendant claim said tract of land and pray to have their title quieted thereto.

The cause was tried by the court without a jury and judgment entered in favor of the defendant, quieting his title to said land. The plaintiff, who is appellant here, interposed a motion for a new trial, which was overruled by the court. He thereupon appealed from the judgment and said order.

The plaintiff's contentions were that there never was or that there never had been discovered a quarter corner stake for said section; that said corner was a lost corner and that it should be established at the midway point between the southwest and northwest corners of said section, and that if the corner was so established, said strip of land would be a part of the southwest quarter of the northwest quarter of said section, which is owned by the plaintiff.

Defendant's contentions were that in the year 1909, a little more than two years prior to the commencement of this action, said quarter corner was only an obliterated corner, and that at that time it was re-established by a surveyor by the name of Lattig, at a point twenty-six feet north of said midway point, and that if that were the true corner, said strip of land would be a part of the northwest quarter of the southwest quarter of said section, which is owned by defendant. The defendant also claimed title to said strip of land by adverse possession.

The court found in favor of the defendant on both of his said contentions, to wit, on the ground of adverse possession and that said strip was a part of said northwest quarter of the southwest quarter of said section, and that it belonged to said forty-acre tract as a part of the original survey of said section made by the United States government.

It will be observed from the foregoing statement that the question involved in this action is the correct location of the quarter corner on the west side of said section 36, and involves the question of whether said corner is a lost corner or an obliterated corner. Sec. 2095, Rev. Codes, provides,

among other things, that surveys or resurveys must be made in accordance with the United States Manual of Surveying Instructions, and the circular on restoration of lost or obliterated corners and subdivisions of sections, issued by the general land office, or by the authority of the United States. Section 2 of a circular of the United States general land office, relative to the restoration of lost or obliterated corners (Revision of June 1, 1909), defines an obliterated corner as follows: "An obliterated corner is one where no visible evidence remains of the work of the original surveyor in establishing it. Its location may, however, have been preserved beyond all question by acts of land owners, and by the memory of those who knew and recollect the true situs of the original monument. In such cases it is not a lost corner."

A lost corner is defined as follows: "A lost corner is one whose position cannot be determined, beyond reasonable doubt, either from original marks or reliable marks or reliable external evidence."

Now, if the evidence establishes the fact that said corner is an obliterated corner, then the judgment of the trial court must be affirmed; but if it establishes the fact that said corner is a lost corner, then the judgment of the court must be reversed and the case remanded, with instructions to establish the corner midway between the southwest and northwest corners of said section.

It is clear from a review of all the evidence that said corner is an obliterated corner and not a lost one. The field-notes of the government original survey show that a willow stake was set at said corner with charcoal at the bottom thereof, and that said corner was established in the manner followed by the government in establishing such corners. Witness Utter, who is a surveyor of unquestioned standing and reputation in the state and has been appointed surveyor general of the United States for the state of Idaho and has held that position for some time, was employed to establish said corner. He testified in establishing same he found a willow stake on the ground, and right near where he found

the stake the ground had been raised above the other part of the earth, and he took said stake and stuck it into that raised point of ground and established the corner there. He further testified how he found said corner, and stated as follows: "Judging from my experience and knowledge of government corners and how they are made, I think it was the original government quarter section corner. It was pretty well dilapidated on account of apparent age. At the time I was convinced that it was the government corner. Relative to a row of trees running east and west, the corner was right on the line with them, bearing a little bit—just a trifle—to the south of it. I remember it was practically on a line with a row of trees but with an instrument it bore in just a little bit north,—that is, the trees were north." He was asked whether he considered that an obliterated or a lost corner and answered: "I did at the time I was there decide that it was simply a corner that had been temporarily obliterated. Q. What is your opinion on that subject at this time? A. The same."

Witness Lattig, who was also a surveyor and civil engineer, was employed to find said corner about two years prior to the trial of this case. At the point where General Utter found said corner, Lattig dug down ten or twelve inches in the ground and found some charcoal there. This was the same point witness Carroll showed Lesh and Wood when he sold them their lands at different times and stated to them it was the quarter section corner. The testimony of Utter, Lattig and the row of trees standing substantially in that line, and other evidence is sufficient to sustain the findings of the court in quieting the title to said land in the defendant, and to show that said corner was an obliterated corner and not a lost corner.

It also appears from the evidence that the parties who built a fence along that line in 1885 put their fence very close to the line; and Parker, a railroad engineer, and Marietta, a local land surveyor, marked said corner as the quarter corner. All of these facts, and the further fact that for over thirty years said point was treated as the correct corner by

all who had anything to do with the land, tend to establish the fact that it was the true corner.

The court also found that the defendant for more than nine years last past had been in possession of the strip of land in dispute, and that during said period he had paid all taxes legally assessed against his interest in the forty-acre tract to which said strip of land belonged.

We are satisfied from all of the evidence that the judgment of the trial court quieting the title in said strip of land in the defendant must be *affirmed*, and it is so ordered, with costs of this appeal in favor of the respondent.

Stewart, C. J., and Ailshie, J., concur.