(January 28, 1915.)

EXCHANGE STATE BANK, a Corporation, Appellant, v. GEORGE C. TABER, Respondent.

[145 Pac. 1090.]

Jury—Opening and Closing Argument to—Promissory Notes—Alteration of—Collateral Security—Conversion of by Agent—Negligence of Pledgee—Instructions—Admission and Rejection of Evidence—Directed Verdict.

1. The order of trial in a civil case is provided by sec. 4383, Rev. Codes, and directs that the trial must proceed in the order there indicated, unless the judge, for special reasons, otherwise directs, and where an action is brought on promissory notes and the respondent admits the execution of such notes but makes special

defenses thereto, it rests in the sound discretion of the trial court to direct the order of addressing the jury, and unless there is a clear abuse of discretion, this court will not disturb the verdict.

2. Where a note appears to have been altered in a material respect, the *onus* is on the party seeking to enforce the payment to show that it is not void, but where the respondent in his answer and counterclaim, in express terms, admits the execution and delivery of the notes, which are set out in full in the complaint, and when introduced in evidence, are in the same condition as they appeared in the complaint, the respondent should not be permitted to introduce evidence tending to establish any alteration, nor should the court instruct the jury upon the law governing the alteration of written instruments.

3. Where the notes are set out in the complaint and when introduced in evidence, are in the same condition as they appear in the complaint, and respondent admits in express terms the execution and delivery of the notes, it will be presumed that any alteration was made prior to the execution of the notes.

4. Where a party by conduct has intimated that he consents to an act which has been done or will offer no opposition thereto, though it could not have been lawfully done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, he cannot question the legality of the action to the prejudice of those who have acted on the fair inference to be drawn from his conduct.

5. A pledgee must exercise ordinary and reasonable diligence to secure the fruits of the collateral, but he is held to no greater degree of diligence, and extraordinary care and efforts in the collection of the collaterals are not necessary.

6. Where a person is jointly agreed upon by the pledgor and pledgee to make collection of collateral notes, he becomes the representative of both parties and neither can charge the other with negligence.

7. Refusal to give certain instructions requested by appellant, *held* to be error.

8. *Held,* that it was error to reject certain evidence offered by appellant.

9. The admission of certain evidence over the objection of the appellant, *held* to be error.

10. Where a party is entitled to have a verdict directed in his favor at the close of the evidence and the case is reversed on his appeal, a new trial will not be ordered. The case will be remanded, with instructions that judgment be entered in his favor.

APPEAL from the District Court of the Fourth Judicial District for the County of Twin Falls.    Hon. C. O. Stockslager, Judge.

Action to recover on certain promissory notes.    Judgment for defendant.    *Reversed.*

Sweeley & Sweeley, for Appellant.

In nearly all the states the order of trial is by statute made subject to conditions, leaving it to the judgment of the court. (15 Ency. Pl. & Pr. 187.)

But that is not true in Idaho.    Our statute is identical with that of California, from which state it was copied.    (*Benham v. Rowe,* 2 Cal. 387, 56 Am. Dec. 342.)

In those jurisdictions where the order of trial is under the control of the court, the test is that the right to open and close belongs to the party against whom judgment would be rendered if no evidence were introduced by either side.    (15 Ency. Pl. & Pr. 184; *Coffman v. Spokane Chronicle Pub. Co.,* 65 Wash. 1, 117 Pac. 596, Ann. Cas. 1913B, 636; *Grisinger v. Hubbard,* 21 Ida. 469, 122 Pac. 853, Ann. Cas. 1913E, 87; *MacDermid v. Watkins,* 41 Colo. 231, 92 Pac. 701; *Rahm v. Deig,* 121 Ind. 283, 23 N. E. 141.)

Where in an action on a note the defendant had admitted its execution without admitting the plaintiff's ownership, the defendant is not entitled to the right to open and close. (*Dodd v. Norman,* 99 Ga. 319, 25 S. E. 650; *Myers v. Binkley,* 26 Ind. App. 208, 59 N. E. 333; *Teller v. Ferguson,* 24 Colo. 432, 51 Pac. 429; *Mastin v. Bartholomew,* 41 Colo. 328, 92 Pac. 682.)

The demand for the right to open and close cannot be made for the first time after the testimony is all in.    (*Edwards v. Murray,* 5 Wyo. 153, 38 Pac. 681.)

If either party to this action is more guilty of negligence than the other in the selection of Robinson, it is the defendant. It is not, however, so much a question of negligence as it is a matter of both parties being bound by the acts of the person agreed upon to handle the property.    (*Murdock v. Clarke,* 90

Cal. 427, 27 Pac. 275; *Damon v. Waldteufel,* 99 Cal. 234, 33 Pac. 903; *Mt. Vernon Bridge Co. v. Knox Co. Sav. Bank,* 46 Ohio St. 224, 20 N. E. 339; *Wilson v. Carlinville Nat. Bank,* 187 Ill. 222, 58 N. E. 250, 52 L. R. A. 632; *Bank of Lindsborg v. Ober,* 31 Kan. 599, 3 Pac. 324; *Kershaw v. Ladd,* 34 Or. 375, 56 Pac. 402, 44 L. R. A. 236.)

The notes in suit were set out in full in the complaint. By his answer the defendant in express terms admitted their execution. No question or suggestion as to their having been altered in any respect was contained in the answer. (14 Ency. Pl. & Pr. 656.)

Defendant having admitted that he executed the notes which were set out in full in the complaint and which, when they were introduced in evidence, were the same as they appeared in the complaint, could not be heard to claim that they had been altered. (*Kleeb v. Bard,* 12 Wash. 140, 40 Pac. 733.)

The appellant as pledgee of the collaterals was required to exercise only ordinary diligence. (*Murphy v. Bartsch,* 2 Ida. 636, 23 Pac. 82; 22 Am. & Eng. Ency. of Law, 2d ed., 902.)

Longley & Walters, for Respondent.

Under our statute the question as to who has the burden of proof is properly a matter of practice, and the ruling of the court thereon will not be reviewed unless there is evidence of an abuse of discretion. (*Viele v. Germania Ins. Co.,* 26 Iowa, 9, 96 Am. Dec. 83.)

Also the court has a discretion in the matter of opening and closing. (*Names v. Dwelling-House Ins. Co.,* 95 Iowa, 642, 64 N. W. 628; *Goodpaster v. Voris,* 8 Iowa, 334, 74 Am. Dec. 313; *Shaffer v. Des Moines Coal etc. Co.,* 122 Iowa, 233, 98 N. W. 111.)

It is well settled in the federal courts that the determination of the right to open and close rests in the sound discretion of the trial court, and is not a proper subject of exception and review on writ of error. (*Day v. Woodworth,* 13 How. (U. S.) 363, 14 L. ed. 181; *Hall v. Weare,* 92 U. S. 728, 23 L. ed. 500; *Lancaster v. Collins,* 115 U. S. 222, 6 Sup. Ct. 33,

29 L. ed. 373; *Florence Oil & Ref. Co. v. Farrar,* 109 Fed. 254, 48 C. C. A. 345.)

"A statute which provides that the plaintiff in an action shall open the case and conclude the argument to the jury unless for special reasons the court otherwise directs, has been held to leave the order of trial within the discretion of the trial court." (*Paine v. Smith,* 33 Minn. 495, 24 N. W. 305; *Aultman & Co. v. Falkum,* 47 Minn. 414, 50 N. W. 471.)

"An erroneous instruction which produces no injury will not be ground for reversal." (Haynes, New Trial and Appeal, secs. 132, 286; *Hisler v. Carr,* 34 Cal. 641; *Bradley v. Lee,* 38 Cal. 362; *Satterlee v. Bliss,* 36 Cal. 489.)

In endeavoring to collect the collateral and for a failure to use such diligence, or for his negligence, inexcusable default, wrongful act or omission, the bailee is answerable for the loss resulting to his debtor. (*Montague v. Stelts,* 37 S. C. 200, 34 Am. St. 736, 15 S. E. 968; *Rumsey v. Laidley,* 34 W. Va. 721, 26 Am. St. 935, 12 S. E. 866; *Chemical Nat. Bank v. Armstrong,* 50 Fed. 798; *Lamberton v. Windom,* 12 Minn. 232, 90 Am. Dec. 301.)

One who seeks to rely upon an estoppel must first show that he exercised due and reasonable diligence to know and ascertain the true facts and conditions, and if he failed to do this, he can make no claim of estoppel. (14 Ency. of Law, 117; *Morgan v. Farrel,* 58 Conn. 413, 18 Am. St. 282, 20 Atl. 614; *Blodgett v. Perry,* 97 Mo. 263, 10 Am. St. 307, 10 S. W. 891; Pomeroy's Eq., 1905 ed., sec. 810.)

To constitute an agency, it requires the concurrence of the minds of both the principal and the agent. (*Western Union Tel. Co. v. Northcutt,* 158 Ala. 539, 132 Am. St. 38, 48 So. 553.)

"The bailee cannot justify his conversion upon the ground that the bailment was illegal, and set this up as an excuse for his own default; nor can he deny bailor's title." (3 Ency. of Law, 758; *Allgear v. Walsh,* 24 Mo. App. 134; *Sinclair v. Murphy,* 14 Mich. 392; *Sherwood v. Neal,* 41 Mo. App. 416; *Burton v. Wilkinson,* 18 Vt. 186, 46 Am. Dec. 145.)

Taber parted with all his right of control over the collaterals, and the appellant was bound to employ reasonable diligence in their collection. (*Hanna v. Holton,* 78 Pa. 334, 21 Am. Rep. 20; *McQueen's Appeal,* 104 Pa. 595, 49 Am. Rep. 592.)

BUDGE, J.—This is an action brought in the district court of Twin Falls county, by the appellant Exchange State Bank, a corporation, against George C. Taber, respondent. Judgment upon a verdict of the jury was entered against the appellant for the sum of $3,924.07 upon the respondent's counterclaim. From said judgment an appeal was prosecuted to this court. On the 14th day of March, 1914, a majority and minority opinion was handed down, resulting in a reversal of the judgment of the trial court and remanding said cause for a new trial. Thereafter a petition for rehearing was filed by both the appellant and respondent, which petition was granted.

This action was brought to recover upon two promissory notes, one for $504.49 dated January 1, 1911, payable May 1, 1912; the second note was for $2,393.00, dated October 8, 1911, payable six months after date. Both notes bear interest at six per cent per annum.

The respondent, in his answer, admits the execution and delivery of the two notes, but denies that they were the property of the appellant and that they were unpaid or past due, and alleges affirmatively that each of said notes has been fully paid and discharged by reason of the facts alleged in the affirmative allegations of respondent's answer and the facts as alleged in respondent's counterclaim, which, in substance and effect are, that the appellant had been negligent in its handling of said promissory notes, which had been pledged with the appellant by the respondent as collateral security to respondent's obligation, to his damage in the sum of $6,566.00.

From the record it appears that on April 8, 1907, James T. Robinson, of Jackson county, Missouri, and George C. Taber, the respondent herein, then of Corral county, Illinois, entered into an agreement whereby Robinson and Taber became the

owners of a tract of land in Kansas City, Missouri. Taber furnished the purchase price of the land. Robinson was to furnish all material and labor in erecting nine houses and was to pay for all street improvements and to furnish all necessary funds to erect the houses, and on the completion and sale of the houses, Taber was to receive $9,200.00 as his full share and interest in the whole transaction, and to accept payments under the following contract:

"Two-thirds of the second mortgage paper received from the sale of the above described property up to the amount, and not to exceed Nine thousand two hundred dollars, and in event that two-thirds of the second mortgage paper does not · amount to $9,200.00 the balance to be in cash.

"James T. Robinson agrees to collect all money paid in on the notes turned over to Geo. C. Taber from the sale of the above described property, and remit to him the 1st of each month the entire life of notes given, free of charge."

On August 2, 1908, the respondent called upon John R. Wolf, assistant cashier of the appellant at Lanark, Illinois, and told Wolf that he had some notes and collaterals and wanted to arrange to borrow some money on these notes; that they were at Kansas City and secured by mortgages; that a Mr. Robinson had been and was collecting the monthly in-stalments as they became due, and was sending the payments to him; that for Wolf to investigate the matter and that a William Hess who resided in the city was well acquainted with Robinson; that he could see him and that he could write and find out the character of the man, how he was, etc. About two weeks thereafter, respondent met Wolf and it was arranged between them that a loan should be made to the respondent; that the bank would accept the collateral notes, and as they were paid the amounts received would be indorsed upon the respondent's obligation to the bank. On September 7, 1908, a letter was written by Wolf and signed by Taber, addressed to Robinson at Kansas City, which is as follows:

"I have talked with J. R. Wolf asst. cashier with whom I am depositing all my notes as collateral and have concluded the best way will be for you to send (all my notes in your

hands) to me at Twin Falls, Idaho. I will endorse them and forward them to Exchange State Bank Lanark then they return them to you for collection the same as I have done and you receipt to Bank instead of me. I enclose your receipts. Please forward notes at once and Oblige.''

In pursuance to the above communication, Robinson forwarded the collateral notes to Taber at Twin Falls, who indorsed them and then sent them to the Exchange Bank at Lanark, and by the bank they were forwarded to Robinson at Kansas City.

It appears that in the construction of nine houses upon the land purchased by Taber, the material was bought from the Belt Line Lumber Company, that within two months after Robinson received the collateral notes from the Exchange Bank, the Belt Line Lumber Company filed notices of materialman's liens, and, in order to avoid foreclosure, Robinson turned over the collateral notes sent to him by the appellant, to the Belt Line Lumber Company in adjustment of its claim, in order to protect the land and houses formerly owned by Robinson and Taber, and which formed the basis of their contract of settlement heretofore referred to. The application of the collateral notes in the adjustment of the Belt Line Lumber Company's claim was not known positively by either the appellant or respondent until November 21, 1911, at which time Robinson wrote a letter to Taber, addressed to Twin Falls, Idaho, in which he admitted in substance, that he had used the collateral notes as above stated. For some time after the collateral notes were diverted by Robinson, he continued to make payments to the bank according to the provision of the collateral notes, first regularly and latterly at irregular periods, and finally ceased to make any payments. The appellant and respondent, as shown by numerous exhibits, persistently urged Robinson to make collections of the collateral notes.

In December, 1911, Taber went to Lanark for a conference with Wolf, which resulted in Wolf making a visit to Kansas City to see Robinson. There is evidence in the record that Taber agreed to go with Wolf. He did not do so. Wolf met

Robinson in Kansas City and made a conditional settlement with him, and then returned to Lanark where he immediately afterwards met Taber. A day or so following, the notes agreed in the settlement to be given by Robinson and his brother, W. S. Robinson, were received by mail at Lanark. The notes were made payable to Taber, who thereafter indorsed the notes and left them with the appellant as collateral security. In the settlement between Taber and the bank, it appears that there was $504.49 still due on the larger of the two notes given to the bank by Taber on September 7, 1908, which is one of the notes in this action. Thereafter Taber returned to Twin Falls.

Upon the trial it was agreed that there was an error in the amount for which Robinson gave his notes at the time of the settlement made in Kansas City of $400. The trial was had before the court with a jury and a verdict was rendered in favor of the respondent in the sum of $3,924.07. This appeal is from the judgment.

Numerous errors are assigned by appellant. The first is that the court erred in holding that the respondent was entitled to open and close the argument to the jury. It rests in the sound discretion of the trial court to direct the order of addressing the jury, and unless there is a clear abuse of discretion this court will not disturb the verdict. (Sec. 4383, Rev. Codes; *Goodpaster v. Voris,* 8 Iowa, 334, 74 Am. Dec. 313; *Shaffer v. Des Moines Coal etc. Co.,* 122 Iowa, 233, 98 N. W. 111; *Brunswick & W. R. Co. v. Wiggins,* 113 Ga. 842, 39 S. E. 551, 61 L. R. A. 513; *Day v. Woodworth,* 13 How. (U. S.) 363, 14 L. ed. 181; *Hall v. Weare,* 92 U. S. 728, 23 L. ed. 500; *Lancaster v. Collins,* 115 U. S. 222, 6 Sup. Ct. 33, 29 L. ed. 373; *Florence Oil & Ref. Co. v. Farrar,* 109 Fed. 254, 48 C. C. A. 345; 38 Cyc. 1300.)

The second assignment is that the court erred in giving the following instruction to the jury:

"You are instructed that if you believe from the evidence in this case, when the notes sued on were originally made or had indorsed thereon by agreement of the parties at any time after making, an agreement or indorsement to the effect that

the same were not to be collected from the defendant, and that thereafter said notes or either of them were altered without the knowledge, authority or consent of the defendant, by cutting from said notes such indorsement, then such an alteration would be material, and the plaintiff cannot recover upon said notes, and your verdict should be for the defendant."

The notes sued upon in this action are set out in full in the complaint. The answer of the respondent admitted the execution and delivery of the notes to the appellant. The respondent did not affirmatively allege in his answer or counterclaim that the notes had been altered in any respect. The alteration of the notes was not an issue in the case. The general rule is that a note which has been altered is not void unless the alteration is material and was made subsequent to its delivery and without the consent of the parties liable. Where a note appears to have been altered in a material respect, the *onus* is on the party seeking to enforce the payment to show that it is not void, but where the respondent in his answer and counterclaim in express terms admits the execution and delivery of the notes which are set out in full in the complaint, and when introduced in evidence were in the same condition as they appeared in the complaint, the respondent should not be permitted to introduce evidence tending to establish any alteration, nor should the court instruct the jury upon the law governing the alteration of written instruments. It will be presumed that the alteration was made before the execution of the instrument. The above instruction as given by the court, was clearly prejudicial error. (14 Ency. Pl. & Pr. 656; *Kleeb v. Bard,* 12 Wash. 140, 40 Pac. 733; 1 Standard Ency. Proc. 822; 2 Am. & Eng. Ency. Law, 2d ed., 185.)

The appellant calls attention to the court's refusal to give instruction No. 5 requested by the appellant, which is as follows:

"In the handling of securities placed with it, the plaintiff was required to exercise only ordinary diligence, and before you will be justified in finding for the defendant on his affirmative defense, or on his counterclaim, it must be estab-

lished by the evidence that the plaintiff was grossly negligent in handling such securities, and that if it had used reasonable diligence it could have collected the amounts due on said collaterals, and unless you find that through the gross negligence of the plaintiff the defendant was in fact damaged, then the defendant has failed to establish his affirmative defense and counterclaim.''

This instruction seems to be within the rule announced by this court in the case of *Murphy v. Bartsch*, 2 Ida. 636, 23 Pac. 82. It is impossible to prescribe any definite rule applicable to every case of property pledged as collateral security; each case must be determined by the attendant facts and circumstances, rather than by any iron-clad rule, but in view of the peculiar circumstances surrounding this case, it would have been eminently proper for the court to have given this instruction.

The next error that we will consider relates to the refusal of the court to admit certain evidence offered by the appellant touching the disposition of the collateral security sent to Robinson by the bank and by Robinson diverted. There is evidence in the record which shows that these collateral notes had been used by Robinson for the express purpose of protecting the business interests of the respondent and Robinson. If this was true and the respondent had in truth and in fact received the benefits of the collateral security either in whole or in part by the payment of certain debts that were liens on the property formerly owned by respondent and Robinson, and out of which respondent expected to realize upon the collateral notes, appellant should have been permitted to introduce any testimony that might establish the application of the proceeds of the collateral notes to the benefit of the respondent. This testimony would have been admissible, if for no other reason than for the purpose of reducing damages.

We are of the opinion that the court erred in admitting respondent's exhibit No. 15, a letter of August 1, 1912, written by Taber to Wolf. This letter was self-serving and immaterial. It had reference to a business transaction that had been for some considerable time closed and fully settled.

We do not think it necessary to discuss each of the remaining 17 assignments of error separately. They are based upon the refusal of the court to grant appellant's motion to strike out all of the testimony offered by respondent in support of the affirmative allegations of his answer, and the refusal of the court to grant appellant's motion for a nonsuit at the conclusion of the introduction of testimony by respondent in support of his counterclaim. We do not think the court erred in refusing to strike out the testimony offered by respondent in support of the affirmative allegations in his answer.

The serious question that confronts us in this case is: Was there sufficient evidence to justify the court in submitting this case to the jury after all of the testimony was received in support of the affirmative allegations of the answer and counterclaim of respondent? It appears that the respondent prior to his execution of the two notes given to the Exchange Bank in the year 1908, had entered into a contract in the year 1907 with Robinson, of Jackson County, Missouri, whereby they purchased some land in Kansas City for $6,500. Taber furnished the money for said purchase as his part of the enterprise. Robinson was to furnish the material and labor in the erection and construction of nine houses upon the lots. Upon completion and sale of the houses and lots, Taber was to receive $9,200 as his share or interest in the transaction. The evidence shows that they proceeded with the contract. Robinson procured the material for the erection of the houses from the Belt Line Lumber Company, to which company he became indebted, and to which company the collaterals were subsequently turned over in order to avoid foreclosure proceedings against the property. This agreement provided that Robinson should collect all deferred payments for the houses free of charge and remit the money to Taber. When Taber went to the bank, this was the arrangement that existed between him and Robinson, and when he made the loan from the bank, he explained to the assistant cashier Wolf, that he had these notes and the arrangement between Robinson and himself for the collection of the payments as they became due, free of charge. It was Taber who made the bank acquainted with

Robinson, who vouched for his honesty and integrity; who suggested that an investigation of Robinson's character and standing in the community where he lived should be made, that he would be a proper person with whom to place these collateral notes for collection. Taber also referred Wolf to one Hess, a witness in this case, an old acquaintance of Wolf's, who, Taber said, would substantiate what he had said with reference to Robinson as an additional reason why the collateral notes should be sent to Robinson for collection.

Taber signed a letter, exhibit "J," addressed to Robinson, requesting him to forward all the notes that he had belonging to him (Taber) to Twin Falls for indorsement, and that he (Taber) would forward the same to the Exchange Bank at Lanark after indorsing them, to be by said bank returned to Robinson for collection in the same manner as he had theretofore done for Taber. Upon receipt of the notes from Robinson, Taber wrote Wolf of date September 21, 1908; that he had just received the notes from Robinson; that he had indorsed the same and sent them for security; that he supposed Robinson had written him (Wolf) and explained all, and further stated: "And he will remit to you from now on the collections on same."

The bank made statements from time to time to Taber, accounted for all payments made through Robinson, and in numerous letters urged Taber to insist that Robinson make collection upon the collateral notes and forward the same to the bank for credit. Taber was notified by the bank repeatedly that Robinson was behind with the collections. The bank informed Taber that they had requested Hess to call upon Robinson and insist upon the collections of the collateral notes being made. Taber wrote to Wolf in response to these communications and particularly of date December 5, 1910, as follows:

"Mr. Guy Wolf, Lanark, Ill.

"Dear Sir:—Yours rec'd some time ago in regard to Mr. Robinson's delinquence on payments. I have written him and have received no answer from him. I wish you would take

this in hand and see what you can do with him. I will write him again this evening.

"Yours respectfully,

"GEO. C. TABER."

There are numerous communications from Taber to the bank in which he states that he has written Robinson insisting upon the collection of the collateral notes and requests the bank to make arrangements with Hess to assist in the collection of these collateral notes. In each and all of these communications, fairly construed, Taber never relinquished ownership or control, or his right to collect the collateral notes. It is quite clear that both Taber and the bank were industrious in their endeavor to bring about the collection of these collateral notes.

On November 21, 1911, Robinson addresses a letter to Taber at Twin Falls, in which he informs Taber that the collateral notes have been diverted. After receiving this information, on December 25, 1911, Taber left Twin Falls for Lanark to consult Wolf. After reaching Lanark a settlement was finally brought about between Robinson and Taber and the notes received from Robinson were put up as collateral security with the bank to secure the payment of the obligations sued upon in this action.

The bank, by the verdict of the jury, has been held responsible for the loss of these collateral notes, upon the ground and for the reason, as appears from the record, that the bank was negligent in handling these collateral notes and their failure to collect the same. We do not think the record supports this conclusion. Within two or three months after the collateral notes were received by Robinson, he diverted them. No effort upon the part of the bank or Taber would have resulted in the recovery of these collateral notes. There could, therefore, be no negligence in the collection of these collateral notes. Robinson had parted with them and was not in a position to collect the payments as they became due. Therefore, if the bank was negligent at all, its negligence consisted in forwarding the notes to Robinson for collection. This, the

bank never would have done if it had not been for the conduct of Taber, which consisted in calling the bank's attention to Robinson, recommending him as a man capable and honest, the proper person to be entrusted with the collection of these notes, who would perform the services free of charge and calling the bank's attention to Hess, an old acquaintance, to verify what he (Taber) had said with reference to Robinson.

"Where a party by conduct has intimated that he consents to an act which has been done or will offer no opposition thereto, though it could not have been lawfully done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, he cannot question the legality of the action to the prejudice of those who have acted on the fair inference to be drawn from his conduct." (*Divide Canal & Reservoir Co. v. Tenney* (Colo.), 139 Pac. 1110; *Truesdail v. Ward,* 24 Mich. 117.)

The more consistent position to take, is that Robinson was the person jointly agreed upon by Wolf and Taber to collect these collateral notes; that he became the joint agent of both of the parties; that being true, neither could charge the other with negligence. This fact is further emphasized when we consider the letters written by Taber with reference to this transaction and that Taber ratified the settlement made by Robinson and Wolf; indorsed the notes given by Robinson and thus adjusted his obligations with the bank. (*Murdock v. Clarke,* 90 Cal. 427, 27 Pac. 275; *Damon v. Waldteufel,* 99 Cal. 234, 33 Pac. 903.)

We think that it was the duty of the court, after all of the testimony had been submitted, to have taken the case from the jury and directed that judgment be entered for the appellant. Where a party is entitled to have a verdict directed in his favor at the close of the evidence, and the case is reversed on his appeal, a new trial will not be granted. The case should be remanded with instructions for judgment to be entered in his favor. (Sec. 3818, Rev. Codes; *Bernhard v. Reeves,* 6 Wash. 424, 33 Pac. 873; *Larson v. American Bridge Co.,* 40 Wash. 224, 111 Am. St. 904, 82 Pac. 294.)

"Where a party shows no right to recover under any possible state of proof, the court is not bound to submit the case to a jury." (*Gorman v. Commissioners of Boise County,* 1 Ida. 655.)

For the foregoing reasons the judgment appealed from must be reversed, and the cause is hereby remanded, with instructions to the trial court to enter judgment for the appellant as prayed for in its complaint, in accordance with the views expressed in this opinion. Costs are awarded to appellant.

Sullivàn, C. J., and Morgan, J., concur.