(No. 4636. August 2, 1927.)

# BLANCHE CASE, Respondent, v. PETER ERICSON and MARGARET ERICSON, Appellants.

[258 Pac. 536.]

BOUNDARIES—APPEAL AND ERROR—EJECTMENT—FAILURE OF COURT TO MAKE FINDINGS BEFORE JUDGMENT NOT ERROR—DETERMINATION OF QUARTER-SECTION CORNER—OBLITERATED CORNERS—ORIGINAL BOUND-ARIES—EVIDENCE, ADMISSIBILITY—REPUTATION MUST BE ANCIENT—COUNTY SURVEYOR'S SURVEY, INSUFFICIENCY OF—RIGHT OF PUR-CHASER—FAILURE TO DETERMINE BOUNDARY, EFFECT.

1. Where action to determine boundary was tried by counsel on theory of ejectment, assignment of error on failure of court to make findings of fact and conclusions of law before entering judgment is without merit.

2. Quarter-section corner is determinable from stone placed by government surveyor which marks the boundary, unless it is not susceptible of location, in which case boundary is determinable by selecting point equidistant between section corners.

3. In case of obliterated corners in a long-settled community, it is necessary to accept evidence of ancient fences and other improvements as evidence of original boundaries, though in its nature hearsay, on theory that persons originally constructing the improvements would naturally locate them with reference to existing monuments.

4. Evidence as to reputation regarding boundaries and declara-tions of deceased persons with reference thereto is admissible because of necessity and because of being best evidence avail-able, though necessity for relying on such evidence must appear.

5. Reputation as to boundary must be ancient in order to be admitted in evidence, because, if not ancient, there must na-turally be available better evidence consisting of testimony of witnesses who can testify of their own knowledge.

6. Under C. S., sec. 3674, relative to surveys by county surveyor being accepted as legal evidence, monument establish-ing quarter-section boundary from section corners located only from established highways and fences thereon, and not on any original monuments, or on testimony of witnesses having knowl-edge of facts, *held* insufficient to authorize finding that section corners were other than lost corners requiring evidence to prove their location.

Argument for Appellants.

7. Purchaser of quarter-section is entitled to one-quarter of whatever the section contains only if quarter-section monuments are correctly placed, since such monuments, if actually placed, control the boundary, though erroneously located.

8. On failure of plaintiff in action to determine boundary to establish section corners from which survey was made, either as obliterated or lost corners, defendant was entitled to directed verdict.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Raymond L. Givens, Judge.

Action to determine boundary. Judgment for plaintiff. *Reversed and remanded.*

Turner K. Hackman, for Appellants.

"An obliterated corner is one where no visible evidence remains of thē work of the original surveyor in establishing it. Its location may, however, have been preserved beyond all question by acts of land owners, and by the memory of those who knew and recollect the true situs of the original monument. In such cases it is not a lost corner." (*Craven v. Lesh,* 22 Ida. 463, 126 Pac. 774.)

---

**Publisher's Note.**

2. Construction of surveys and establishment of lost corners, see note in 22 **Am. St.** 34.

3. Hearsay evidence as to boundaries, see note in 15 **Am. Dec.** 628.

4. Admissibility of deceased former owner's declarations to prove boundaries, see notes in 94 **Am. St.** 678; 36 **Am. Rep.** 749; 19 **Ann. Cas.** 551. See, also, 4 **R. C. L.** 122.

5. See 4 **R. C. L.** 124.

See Appeal and Error, 3 **C. J.**, sec. 620, p. 723, n. 72.

Boundaries, 9 **C. J.**, sec. 18, p. 164, n. 1; sec. 19, p. 166, n. 11; sec. 135, p. 217, n. 68; sec. 308, p. 274, n. 55; sec. 310, p. 275, n. 62, p. 276, n. 66; sec. 311, p. 276, n. 67, 71; sec. 329, p. 281, n. 32; sec. 343, p. 286, n. 92; sec. 348, p. 290, n. 14.

Evidence, 22 **C. J.**, sec. 252, p. 255, n. 43; sec. 257, p. 258, n. 77.

Public Lands, 32 **Cyc.**, p. 799, n. 68.

The object of the action is for, "the determination of the boundary line between certain lands severally owned by the plaintiff and an adjacent tract owned by the defendants." (*Phillips v. Mortensen,* 51 Cal. App. 552, 197 Pac. 145; *Howatt v. Humboldt Mill. Co.,* 61 Cal. App. 333, 214 Pac. 1009.)

"Assuming as, we properly may, that at least from 1851 to 1866 the location of the fence, as a dividing line between the lots, was acquiesced in by the coterminous owners, the defendants are estopped from controverting the correctness of the location. (*Sneed v. Osborn,* 25 Cal. 619; *McCormick v. Barnum,* 10 Wend. (N. Y.) 104; *Adams v. Rockwell,* 16 Wend. (N. Y.) 286, 302; *Perkins v. Gay,* 3 Serg. & R. (Pa.) 327, 8 Am. Dec. 653; *Hagey v. Detweiler,* 35 Pa. 409.)"

"If one of two coterminous proprietors of lands erects what is intended to be a division fence, claiming it to be on the true line and holds and occupies the lands inclosed by the fence adversely for five years, this is sufficient to support the statute of limitations, even though the other coterminous proprietor did not at any time acquiesce in the location of the fence, but constantly protested against it." (*Whitman v. Steiger,* 46 Cal. 256.)

"Where it is proved that a line has been agreed upon, either expressly or by long acquiescence as the dividing line between two tracts of land, courts will not disturb the line." (*Truett v. Adams,* 66 Cal. 218, 5 Pac. 96; *Silvarer v. Hansen,* 77 Cal. 579, 20 Pac. 136; *Helm v. Wilson,* 76 Cal. 476, 18 Pac. 604; *Lowndes v. Wicks,* 69 Conn. 15, 36 Atl. 1072.)

"'An agreement fixing a boundary line need not be shown by direct evidence, but may be inferred from conduct, and especially from an acquiescence.' (9 C. J. 232; 5 Cyc. 933.)

"'The agreement must be expressed or implied from the acts of the parties, and acquiesced in for the period fixed by the statute of limitations.' (*Wheatley v. San Pedro, L. A. & S. L. R. R. Co.,* 169 Cal. 505, 147 Pac. 135.)

"It is true, as has repeatedly been held, that adjoining owners cannot by their mere agreement, establish a boundary other than a true one, where they know that the line attempted to be fixed is not in fact the true boundary. (*Nathan v. Dierssen,* 134 Cal. 282, 66 Pac. 485; *Lewis v. Ogram,* 149 Cal. 505, 117 Am. St. 151, 87 Pac. 60, 10 L. R. A., N. S., 610; *Mann v. Mann,* 152 Cal. 23, 91 Pac. 994.)"

Stephan & North, for Respondent.

Only the certified record can be considered by the supreme court and instructions, offered at the time of trial by the appellants and refused by the trial court, cannot be reviewed by the supreme court if they are not a part of such certified record for appeal. (C. S., secs. 6886, 7167; *Douglas v. Kenney,* 40 Ida. 412, 233 Pac. 874; *Sweaney & Smith Co. v. St. Paul Ins. Co.,* 35 Ida. 303, 206 Pac. 178; *Witthoft v. Gathe,* 38 Ida. 175, 221 Pac. 124.)

Unofficial maps may be introduced in evidence. (22 C. J. 910, par. 1114.)

One who is a qualified engineer and surveyor and is licensed under the laws of this state to practice his profession and who has been engaged in the practice of such profession for eighteen years may give opinion testimony in the trial of a civil case. (22 C. J. 690, par. 780; 722, par. 812.)

Where plaintiff has made a *prima facie* case and defendants in their defense have failed, by their proof, to destroy such *prima facie* case, leaving questions of fact to be determined, a motion for a directed verdict is properly refused. (*Keane v. Pittsburgh Lead Min. Co.,* 17 Ida. 179, 105 Pac. 60; *Moody v. Morris-Roberts Co.,* 38 Ida. 414, 226 Pac. 278; 26 R. C. L., p. 1067, par. 75.)

The instructions given by the trial court properly announce the law applicable to the issues involved in the case. (*Craven v. Lesh,* 22 Ida. 463, 126 Pac. 774; C. S., secs. 3674, 6603; 32 Cyc. 799, par. 2; 801, par. 4; *Walters v. Commons,* 2 Port. (Ala.) 38; *Nolen v. Palmer,* 24 Ala. 391; *Citizens*

*Right of Way Co. v. Ayers,* 32 Ida. 206, 211, 179 Pac. 954; *Blayden v. Morris,* 37 Ida. 37, 214 Pac. 1039; *Meyer v. Schoeffler,* 39 Ida. 500, 227 Pac. 1061.)

The burden of proving adverse possession rests upon the appellants. (C. S., sec. 6603; 2 C. J. 262, par. 585; 268, par. 596.)

BRINCK, Commissioner.—Plaintiff is the owner of the north half of the northeast quarter, and defendants are the owners of the northwest quarter, of section 32, township 9 south, range 16 E., B. M., in Twin Falls county. Plaintiff brings this action to determine the boundary line between her land and the defendants', it being alleged that the defendants erected a fence the south end of which is at the center of the section, and the north end of which is 49 feet east of the section corner on the north line of the section, thus cutting off a strip of plaintiff's land, which strip is occupied by defendants. The defendants deny the allegation that the fence is not on the correct boundary line. From judgment establishing the fence at practically the line claimed by plaintiff, and containing certain remedial provisions, the defendants appeal.

[1] The action was commenced in 1916 by counsel not now appearing for respondent, and, it seems, was permitted to remain dormant till defendants in 1924 demanded trial. The complaint asks equitable relief, but the cause was apparently tried as an action in ejectment. Among the errors assigned, appellants complain that the court should have made findings of fact and conclusions of law before it could have entered a judgment, and that the judgment could not be based upon the verdict of the jury. This is urged, however, merely as a specification of the insufficiency of the evidence to justify the verdict; but even if properly made, the assignment would be without merit, the case having been tried by counsel on the theory of ejectment.

The errors assigned which are necessary to consider involve the admission of evidence of a purported survey by

the county surveyor; the giving of certain instructions, and the denial of a motion by defendants for a directed verdict.

Plaintiff's case rested principally upon the testimony of the witness Berg, county surveyor of Twin Falls county, who, in 1923, made a more or less complete survey of section 32. From his uncontradicted testimony it appears that the north end of plaintiff's fence is located 48 feet east of a point equidistant between the northeast and northwest section corners of section 32, if the points assumed by this witness to be such section corners were in fact the true corners of the section. He testified that he found none of the monuments of the original survey at either of the section corners or at the quarter-section corner on the north side of the section, and that, in his opinion, the quarter-section corner was a lost corner, but that the section corners were merely obliterated and not lost.

There was evidence for defendants tending to show that when the fence here in question was built, in 1907, its north end was located 25 feet directly south of what appeared to be a government monument consisting of a marked stone set in the ground beside a mound of earth; that the stone remained there until 1913, when it was pulled out of the ground by a boy driving along the road in which the stone was imbedded; and that the stone was soon afterwards reset by a surveyor at the exact place it had previously occupied.

[2] If the stone as it appeared in 1907 was the original government monument, and in the place where the government surveyor had set it, and the testimony of defendants' witnesses as to its being reset in the same location is to be believed, then the quarter-section corner is not lost; but its original location, being thus determinable, would mark the north point of the boundary between the lands of the parties. If, on the other hand, this evidence is not to be believed, or if the stone as originally located was not the monument placed there by the government surveyor, the north point of the boundary between the parties would be a point equidistant between the northeast and northwest

corners of the section. (*Craven v. Lesh,* 22 Ida. 463, 126 Pac. 774; and see *Sala v. Crane,* 38 Ida. 402, 221 Pac. 556.)

In order for plaintiff to prevail upon the theory that the quarter-section corner was lost, it became necessary for her to establish by competent evidence the correct location of the northeast and northwest corners of the section, from which the quarter-section corner could be measured. It is appellants' first contention that the court erred in admitting evidence of the survey made by Berg, for the reason, as they urge, that the section corners adopted by him were not shown to be correct, and were not determined by him as a basis for his survey in accordance with the rules properly applicable thereto.

C. S., sec. 3674, provides that no survey made by the county surveyor or other surveyor shall be considered legal evidence in any court within the state, except such surveys as are made in accordance with the United States Manual of Surveying Instructions, the circular on restoration of lost or obliterated corners and subdivision of sections, issued by the General Land Office, or by the authority of the United States, the state of Idaho, or by mutual consent of the parties. The circular referred to in the statute is quoted in *Craven v. Lesh, supra,* as follows:

"An obliterated corner is one where no visible evidence remains of the work of the original surveyor in establishing it. Its location may, however, have been preserved beyond all question by acts of landowners, and by the memory of those who knew and recollect the true situs of the original monument. In such cases it is not a lost corner."

And: "A lost corner is one whose position cannot be determined, beyond reasonable doubt, either from original marks or reliable marks or reliable external evidence."

The United States Manual of Surveying Instructions further says:

"A corner will not be considered as lost if its position can be recovered satisfactorily by means of the testimony and acts of witnesses having positive knowledge of the precise location of the original monument."

The witness Berg rested his assumption that the points he fixed were the true section corners, not upon any original monuments found by him at those points, nor upon testimony of witnesses of persons having knowledge of the facts; but merely upon an inspection of the existing surroundings of the supposed corners. No effort was made by him to discover original monuments on the line east or west of the corners of this particular section. He found at each of the north section corners of section 32 a road running north and south, and one running east and west. At the northeast corner he found fences, there being a fence corner at each of the four corners of the road intersection, and on the east side of the north and south road were some trees apparently 12 or 15 years old. There were also some telephone and power lines located along the road. He knew that the road had been in its present location some 18 years, and that a highway district, which had been established some three or four years prior to the trial, ran its roads parallel to these corners, and that the highway district had a surveyor whose business it was to determine the correct location for the roads, but he had no knowledge that such surveyor located these corners. His testimony is not materially aided by that of any other witness. The evidence of other witnesses for plaintiff established nothing more than that the north and south road at the northeast corner of the section, and the fences on the east side of the road were in the same position in 1907 as when the Berg survey was made, and that the other fences had been built at about the time this controversy arose or later.

[3] In cases of obliterated corners in a long-settled community, it of course usually becomes impossible to produce testimony of witnesses who have seen the original monuments and can testify of their own knowledge as to their location; and in such cases it becomes necessary to accept evidence of ancient fences and other improvements as evidence of the original boundaries, though in its nature hearsay, upon the theory that the persons originally constructing the improvements would naturally have located them with reference to

existing monuments. (*Village of Galesville v. Parker*, 107 Wis. 363, 83 N. W. 646; *City of Maysville v. Truex*, 235 Mo. 619, 139 S. W. 390.)

[4] Likewise, evidence as to reputation regarding a boundary, and declarations of deceased persons with reference thereto, is admitted, because of necessity and because it is the best evidence available. But in such cases, the necessity for relying upon such evidence must appear (*Lamb v. Copeland*, 158 N. C. 136, 73 S. E. 797), and some facts from which its reliability may be reasonably inferred. Thus, to admit declarations of third persons upon such subject as an exception to the hearsay rule, it must ordinarily be shown that the declarant had actual knowledge of the fact, or means from which such knowledge could be inferred, and that the declarant is dead, as well as that the declaration was made *ante litem motam*. (3 Jones' Commentaries on Evidence, 2d ed., sec. 1103.) [5] Likewise, reputation as to a boundary must be ancient, that is, of a past generation, in order to be admitted in evidence, because if not ancient there must naturally be available better evidence consisting of testimony of witnesses who can testify of their own knowledge (3 Wigmore on Evidence, 2d ed., sec. 1580); and such evidence of reputation must also be as of a reputation *ante litem motam*. (Ibid., sec. 1588.)

[6] The existence of a fence or road as marking a government corner whose monument is obliterated can stand upon no other basis than that of hearsay testimony, and evidence thereof should be admitted under rules analogous to those governing the admission of declarations or reputation as evidentiary of boundaries. Some facts should be established from which an inference might arise that such landmarks were located with reference to a government monument or known corner, and it should be made to appear also that better evidence is not available. Only the fence on the east side of the road and the road itself were facts shown to have existed prior to the present controversy; they are not shown to have existed earlier than defendants'

own fence, erected in 1907; no evidence was offered tending to show that the fence was built by an owner or claimant of the lands which it inclosed, or whether the land was ever occupied, or whether title to the land had passed from the government, or had even been initiated; no evidence was offered tending to show that the road was intended to have been located on a section line, nor how it came to be located where it was, nor that it has been commonly regarded as marking the section line. Under the rules prescribed in the United States Manual of Surveying Instructions, the surveyor should have made a more thorough inquiry before adopting any points as true corners, and better evidence than that here produced to show their authenticity should have been presented to the court. The survey made by the witness Berg was not legal evidence under C. S., sec. 3674. On the evidence produced, the jury would not have been authorized in finding that the northeast and northwest section corners were other than lost corners, and as such there was no evidence offered to prove their location.

Appellants also complain of an instruction to the effect that the purchaser of a half or quarter section is entitled to one-half or one-quarter of whatever the section contains. If incorrect, this instruction would be prejudicial, as leading the jury to believe that if the government surveyor had located the quarter-section monument elsewhere than midway between the section corners, they would be authorized to establish its correct location. Counsel for respondent cite in support of this instruction, 32 Cyc. 799; *Walters v. Commons,* 2 Port. (Ala.) 38; *Nolen v. Palmer,* 24 Ala. 391. The Alabama cases cited hold that since the acts of Congress embodied in Rev. Stats., secs. 2395 and 2396, do not expressly require government surveyors to mark quarter-section corners, monuments placed by them at such corners are not controlling, but that the true line shall be placed as nearly as possible equidistant from the section corners. This is the correct rule prescribed by Rev. Stats., sec. 2396, where the quarter-section corner is not marked by the surveyor; but that section expressly provides that—

"All the corners marked in the surveys, returned by the Surveyor-General, shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate . . . . "

[7] The Alabama rule is not followed in any other decisions we have found; and the rule that the quarter-section monument, if actually placed, controls the boundary, though erroneously located, is established not only in this state (*Craven v. Lesh, supra*), but elsewhere (*Heybrook v. Index Lumber Co.*, 49 Wash. 378, 95 Pac. 324; *Stanley v. Hermanson*, 88 Neb. 823, 130 N. W. 573), and is likewise recognized by the United States land office in its circular above mentioned. (38 L. D., p. 5, sec. 17.) This being true, a purchaser of a quarter-section is entitled to one-quarter of whatever the section contains, only if the quarter-section monuments are correctly placed.

"If, as is frequently the case, it happens that by reason of errors or defects in the original survey a section has been unequally divided, and the purchaser of a 'quarter' or 'forty' has acquired a larger acreage than has his neighbor who buys another quarter or forty in the same section, there is neither legal nor equitable obligation on part of the former to divide the excess with the latter." (*Cooper v. Quade*, 191 Iowa, 461, 182 N. W. 798.)

To the same effect, see *Yolo County v. Nolan,* 144 Cal. 445, 77 Pac. 1006.

The instruction given was incorrect.

[8] It is unnecessary to notice the other errors assigned, except as to the refusal of the motion for a directed verdict. Conceding plaintiff's theory that the north quarter-section corner was a lost corner, it was incumbent on her to have established, by competent evidence, either as obliterated or lost corners, the northeast and northwest section corners, from which the quarter-section corner could have been determined. These points not having been established by competent testimony, the request that a verdict be directed in defendants' favor should have been granted.

We recommend that the judgment be reversed and the cause remanded, with directions that judgment be entered for the defendants. (*Exchange State Bank v. Taber*, 26 Ida. 723 (737), 145 Pac. 1090.) Costs to appellants.

Varian and McNaughton, CC., concur.

The foregoing is approved as the opinion of the court. The judgment is reversed and the cause remanded, with directions that judgment be entered for the defendants. Costs to appellants.

Wm. E. Lee, C. J., and Budge, Taylor and T. Bailey Lee, JJ., concur.

Givens, J., disqualified.