(No. 5399. March 27, 1930.)

W. W. WHITE and JOSEPHINE WHITE, Husband and Wife, Respondents, v. WILLARD T. GARRETT, Appellant.

[286 Pac. 362.]

Frawley & Koelsch, for Appellant.

Luther W. Tennyson, for Respondents.

GIVENS, C. J.—Plaintiffs-respondents entered into an executory contract with one Charles A. Stewart for the sale of a house and approximately 160 acres of land adjoining. Stewart was acting in the transaction for L. H. Braun. Shortly thereafter Braun discovered that a small strip of land on which the house stood was not included in the land described in his escrow deed but was part of a parcel patented to one Maurice O'Connell. Braun purchased this strip from O'Connell and secured a deed therefor. This

deed, like the executory contract, ran to Charles A. Stewart, acting for Braun.

In 1919 Braun and Stewart assigned the executory contract to Garrett, the defendant-appellant herein, and at the same time deeded him the small strip of land which is the subject of this controversy. Garrett made some payments on the contract in accordance with its terms but in September, 1921, defaulted, and in 1923 the plaintiffs, the vendors who had sold the land originally to Stewart and Braun, resumed possession.

The defendant acquiesced in their repossession of the 160 acres but refused to surrender the strip of land on which the house stood, claiming title to this by virtue of his deed from O'Connell. Plaintiffs apparently concede this claim of defendant. The real dispute is over the boundary between their respective premises. Defendant contends that his land extends to certain old fences and natural boundaries. Plaintiffs contend that defendant's boundaries have been fixed by a recent survey made in accordance with the calls of his deed.

In December, 1927, plaintiffs instituted this action to quiet title. The trial court found for the defendant, decreeing him to be the owner of the land but fixing the boundaries of the land in accordance with the survey made after the commencement of this action by D. O. Stevenson.

Defendant has appealed from that part of the decree fixing the boundaries, claiming that his title extends to certain fences and natural boundaries by reason of adverse possession, extending over a period of five years or more.

The land which defendant claims by reason of adverse possession is part of the land included in the contract of purchase assigned to him by Braun and Stewart. His possession retained its subordinate character and could not have been adverse to his vendor until he surrendered the possession to which he was entitled under the contract. (*Davis v. Devanney*, 7 Ida. 742, 65 Pac. 500; *Butts v. Skinner*, 202 Ky. 356, 259 S. W. 708; *Immell v. Seaverns*, 117 Kan. 12, 230 Pac. 69; *Central Pac. Co. v. Tarpey*, 51 Utah,

107, 168 Pac. 554; 1 A. L. R. 1319, and note; 2 C. J. 151.) This did not take place until March, 1923, some months less than five years before the commencement of the action.

But it may be urged that defendant's possession was hostile prior to 1923. This is untenable for this reason. The contract of purchase under which defendant originally entered provided that in case of default "all and every person or persons claiming or to claim under him shall thenceforth be a tenant of the said W. W. White," the vendor. Under this provision defendant became a tenant of plaintiffs on his default in September, 1921, and continued as such at least until some time in 1922.

C. S., sec. 6604 provides that where the relationship of landlord and tenant has existed, the possession of the tenant shall be considered the possession of the landlord "until the expiration of five years from the time of the last payment of rent, notwithstanding that such tenant may have acquired another title, or may have claimed to hold adversely to his landlord." Under this statute, defendant's hostile possession could not have commenced prior to 1926 or 1927.

Some contention is made that the boundaries as determined by Surveyor Stevenson were not the correct boundaries because they were not based on the original survey. The attorney for the defendant admitted that the original section corner as determined by the government survey had been lost and the trial court so found. Mr. Stevenson testified that he had relocated the corner in accordance with the instructions given in the Circular of the General Land Office of the United States as required by C. S., sec. 3674. During the course of his testimony he suggested that the original survey had been erroneous and that he believed his survey to be correct.

Defendant maintains that the purpose of a resurvey is to discover where the original lines ran and not to correct any inaccuracies that may have occurred in the original survey. This is the general rule where a government corner has been merely obliterated but not lost. (*Craven v.*

*Lesh,* 22 Ida. 463, 126 Pac. 774; *Wing v. Wallace,* 42 Ida. 430, 246 Pac. 8.)

 Where a government corner has been lost, the method of relocating it has been prescribed by statute and the rules of the General Land Office of the United States. (C. S., sec. 3674; *Craven v. Lesh, supra; Case v. Erickson,* 44 Ida. 686, 258 Pac. 536; 9 C. J. 165.) Where this method has been followed, it will be presumed that the resulting survey follows the original lines.

We believe the evidence sustains the finding of the trial court that the original corner had been lost and that the Stevenson survey re-established it in the manner prescribed by statute.

The judgment is affirmed. Costs to respondent.

Budge, Lee, Varian and McNaughton, JJ., concur.