Halley v. Harriman.

---

TULLIUS C. HALLEY, APPELLANT, v. OSCAR E. HARRIMAN, APPELLEE.

FILED JUNE 23, 1921. No. 21543.

1. **Boundaries:** EVIDENCE. Where the question in dispute is the proper location of quarter corners of a section of land, and de-

fendant produces evidence tending to show the establishment of such corners by the government surveyor at points conforming to the field notes, and plaintiff produces no evidence of their location elsewhere, a verdict for defendant is sustained by the evidence and will not be disturbed.

2. ——: ——. Monuments or other markings placed by government surveyor locating corners will control field notes and all other surveys.

3. ——: ——. Where there is no other evidence on the subject, and the location of a quarter corner may be fixed with reasonable certainty by using the field notes of the government surveyor, such location will be adopted.

4. ——: LOCATION OF CORNERS. In such case there is no authority for fixing the quarter corner at a point midway between the known section corners if such point does not conform to the field notes.

5. ——: ——. Where a township corner has been definitely located by government surveyors, and the field notes show the location of a quarter corner in a straight line at the proper distance, a change of the location of the township corner by state, county, or other surveyors, accepted by the owners of contiguous lands, will not affect the location of such quarter corner, in the absence of evidence that such quarter corner was actually established at some other point by the government surveyor.

6. ——: ——. Even though the new township corner was also marked by the government surveyor, this would not change the quarter corner, in the absence of field notes or other evidence showing the establishment of a quarter corner consistent with such new corner, and would not render the surveys inconsistent to such a degree as to require the fixing of quarter corner midway between new township corner and southwest corner of section.

APPEAL from the district court for Scotts Bluff county: RALPH W. HOBART, JUDGE. *Affirmed.*

*Morrow & Morrow,* for appellant.

*L. L. Raymond* and *R. G. Simmons, contra.*

Heard before MORRISSEY, C.J., ALDRICH, FLANSBURG and ROSE, JJ., ALLEN and REDICK, District Judges.

REDICK, District Judge.

This is an action of ejectment brought by appellant

against appellee to recover the possession of about 26 acres of land in the west half of section 6, township 22, range 54, and the dispute arises from the existence of two township lines separating townships 22 and 23, the distance between them adjoining the north line of section 6 being about 1,000 feet; appellee claims that the northwest corner of section 6 was originally located in the north township line about 300 feet east of a corner in the south township line, which latter corner is now accepted by the parties as the northwest corner of section 6 so far as this litigation is concerned. The question is further complicated by the existence of double corners at the southwest corner of section 6, one being approximately a mile due south of the accepted northwest corner above referred to, and the other one to the northeast in the same relative position to the southwest corner just mentioned as the corner on the north township line bears to the accepted corner on the south township line; this last described southwest corner is accepted by the parties as correct; and it is shown that one Jones, who preempted the northeast quarter of section 12 in 1883, built his fence to the southwest corner of section 6 first described, and in 1899 moved the corner of his fence northeast to the accepted southwest corner of section 6, and has maintained it there ever since.

The southeast corner of section 6 is accepted and is established as an original corner, from which, if a line be drawn due north about one mile, it would intersect the north township line and be continuous with the line between sections 31 and 32, township 23, range 54; however, the northeast corner of section 6 is fixed and accepted by the parties at a point in the south township line about 550 feet west of the point of intersection of said south township line with the line just described.

Assuming the established southeast corner and the three accepted corners of section 6 to be correct, the section is irregular in shape, the south line being 80 feet longer than the north, and the west line 189 feet longer

than the east, and the acreage about 120 short.

In 1906 the United States reclamation service caused a survey of section 6, *inter alia*, to be made, by which the exterior lines of said section were drawn conforming to the established southeast and other accepted corners, and the east and west center line drawn approximately midway between the north and south lines.

Now, the line in dispute between the parties, the proper location of which will determine their rights, is the east and west line dividing the section; the plaintff claiming that the line should be drawn as fixed by the reclamation survey, and the defendant claiming that it should be drawn through two points on the east and west line, respectively, which bear about the same relation to the quarter-section corners established by the reclamation survey that the northwest corner in the north township line bears to the accepted northwest corner in the south line, and the accepted southwest corner bears to the original Jones corner, the ground in dispute lying in the west half of the section between the disputed quarter-section lines.

The plaintiff bases his claim upon the proposition that no government quarter corners were established on the east or west sides of section 6, or, if once established, they have been obliterated so that they could not be found, and that, therefore, the reclamation survey fixing the quarter corners at approximately equal distances between the section corners must be accepted as determining the lines of the respective owners; while the defendant claims that the quarter corners were established by government survey at points approximately 40 chains north of the two south corners, respectively, and that the line should be drawn through those points, which for clearness, and as described in the evidence, will be referred to as the Rosenfelt corner on the east and the Perry Harris corner on the west side.

A verdict having been recovered by the defendant in the court below, the first point made by the appellant is that

Halley v. Harriman.

the verdict is not sustained by the evidence. He produces a number of witnesses, civil engineers and others residing or formerly residing in the vicinity of section 6, who testified that they made search for the original quarter corners on the east and west sides of section 6, and were unable to discover any evidence in the way of pits, mounds, stakes or other monuments tending to show that the quarter corners had been marked by the government surveyor, some of them stating that, while there were some pits near the Rosenfelt corner, they were not of a character to stamp them as original markings, and one of them stating that he saw two pits at the Perry Harris corner which looked like they were freshly dug.

The defendant produced witness Magruder, a civil engineer, who testified that in 1916 he made a survey of the east line of section 6, and starting with the southeast corner and measuring north he found what he considered to be a government corner, near the Rosenfelt corner, and within 15 feet of the place where such corner ought to be according to the government field notes, stating that he found small rings in the earth indicating that it was an original pit, and that said corner was in line with known corners to the south; and Rosenfelt testified that the pit found by Magruder was some 9 or 10 feet south of where plaintiff's witness Finley had dug and failed to find it. Rosenfelt testified that he saw a mound and two pits at about the place where Magruder dug.  And with reference to the west quarter corner defendant produced Perry Harris, the original locator on the northeast quarter of section 1, who testified that in 1886, at the time of his location, he saw a couple of pits which were shown to him by a Mr. Fairfield, county surveyor, as the southeast corner of his quarter, and that he broke the ground within about 50 or 60 feet of the corner, leaving that amount for a section-line road.  Perry Harris further testified about having seen the township corner on the north township line, and in locating his land claimed to that corner. Magruder also claims to have found a well-defined pit

mark at the Perry Harris quarter corner.

It would unduly extend this opinion to refer more specifically to the testimony upon the question of the east and west quarter corners, but from what has been referred to it would seem that there was enough dispute in the evidence to make it a question for the jury.

In view of the fact that the evidence of defendant's witnesses tends to establish the fact that evidence existed upon the ground of the original establishment of the quarter corners as claimed by him, and the fact that such corners conform approximately to the notes of the original surveys as to course and distance, and the location of roads and fences, we would not be justified in saying that the finding of the jury is not warranted, especially as there is no evidence on the part of the plaintiff that such corners were actually located at different points; evidence for plaintiff merely attacking the authenticity of the corners claimed by defendant, and to the effect that no quarter corners could be found.

If the evidence of defendant's witnesses as to the existence of the Rosenfelt and Perry Harris corners were not sufficient to support the verdict, then we have the situation that the plaintiff's witnesses do not attempt to fix the actual location of the disputed quarter corner at any other place, and the only evidence in the case, therefore, is the field notes which state that the section lines were drawn straight and quarter corners fixed at 40 chains, and the case is brought precisely within the rule established in *State v. Ball*, 90 Neb. 307, in which it is held: "Where the monuments which mark corners of the original survey are lost or obliterated and their original location cannot be established by other evidence, and the field notes returned by the government surveyor show that he established an interior section corner on a straight line between the exterior lines of the township and determined its location by courses and distances, the notes are to be accepted as presumptively correct, and can only be overcome by clear and satisfactory evidence that the

corner was established at a point other than as thus described." See, also, *Harris v. Harms,* 105 Neb. 375.

It is only where no corners were located by the government surveyors, or it is impossible to ascertain with any degree of certainty the point where the government surveyor has located the corner, that the quarter corner may be fixed midway between the known section corners. *Harris v. Harms, supra.* But in this case, as is elsewhere demonstrated, the location of the quarter corners as fixed by the government surveyor may be definitely established.

A great mass of evidence is in the record as to the correct location of the northwest corner of the township; whether at the conceded corner in the south township line or at the point to the northeast thereof as above described in the north township line; both corners showing evidence of being original. The writer is convinced that the northwest corner of the township was originally located in the north township line, for the reasons: (1) It is in almost an exact north and south line with undisputed corners from the south township line; (2) in proper position according to course and distance; (3) original marks are well established; (4) it is on the line taken for the subdivision of township 23. On the other hand, the south township corner is 530 feet in excess of 6 miles from the northeast township corner, and, moreover, is about 600 feet south of a true east and west line drawn from the northeast township corner. The probable explanation of the existence of this double corner is that suggested in the very clear and logical report of Surveyor Mathews at pages 350 to 355 of the bill of exceptions. But this question is of no practical importance if, as the verdict indicates, the quarter corners are established as claimed by defendant; the increased shortage of acreage in the north half of the section resulting from acceptance of the south township line, in such case, would be charged to the north tier of 40's, and could not be distributed throughout the section.

Complaint is made of instruction No. 6, given by the

court below, that it gives undue prominence to the field notes of the government survey, and comments on the weight of the evidence, and appellant in his brief quotes part of such instruction as follows: "And in this connection as to the nature of the evidence and the weight to be given it, you are instructed that, by the law of this state, field notes and plats of the original government survey are competent evidence in ascertaining where monuments are located, in case a government corner is destroyed or the place where it was originally placed cannot be found or the location of original corner is in dispute." But the government surveys are, as a matter of law, the best evidence; and, if the boundaries of land are clearly established thereby, other evidence is superfluous and may be excluded; the best evidence is the corners actually fixed upon the ground by the government surveyor, in default of which the field notes and plats come next, unless satisfactory evidence is produced that the corner was actually located upon the ground at a point different from that stated in the field notes. While the words "and the weight to be given it" might more properly have been omitted, if they constitute error, it was without prejudice, especially in view of the closing sentences of the instruction:

"But monuments erected by the government surveyors to mark section corners will control the field notes, although in conflict therewith. If the monuments have been obliterated or become uncertain, but their location can be ascertained by the testimony of witnesses who know and testify to the fact, the site thus established will control."

Exception is also taken to instruction No. 9: "You are instructed that if in extending a line given as a line between two sections a corner is reached marked as a section corner at a point where the field notes say it was found by the government surveyor who subdivided the township and made and certified the field notes, such corner will govern and determine the true line, unless

it is shown that the corner was placed at a point different than that called for by the field notes."

Appellant contends that by this instruction he was compelled to show that the quarter corner had been located at a point different from that indicated by the field notes, and that, inasmuch as his claim was that the corner had never been marked upon the ground at all, the jury were, in effect, told that the place indicated by the field notes should be taken as the correct corner. Nevertheless, we think this instruction stated the law, and if its effect was all that appellant claims for it, it would not be the first time that a litigant suffered defeat because he was unable to procure the evidence necessary to prove his case. Furthermore, we think the instruction applicable to the facts, for the reason that the evidence tends to show that, from a point five miles south of the disputed township corner, a straight line produced north (V.15°25') would reach the disputed township corner on the north township line at approximately the proper distance, and if the township corner were in dispute in this case, the evidence is ample to warrant a finding that the point so reached was the township corner as fixed by the original survey. This being so, if there was no evidence in the case other than the field notes, the quarter corner on the west side of section 6 should be located 40 chains north of the southwest corner, a point where the surveyor says in his notes, "Raised mound of earth 2 ft. high from pits 18x24x12 in. deep for quarter section corner," being approximately the point where the evidence of appellee tends to show markings upon the ground; and the subsequent adoption, acceptance or location of a different township corner than that indicated by the field notes could not operate to displace the quarter corner so established.

Complaint is made of instruction No. 17, whereby the jury were told in effect that they must choose between the line claimed by the plaintiff and that claimed by the defendant, and that there was no room for the establishment

Halley v. Harriman.

of any other line, and counsel for appellant maintains that the jury should have been permitted, for example, to find a diagonal line drawn from the Rosenfelt corner to the reclamation corner on the west side, thus dividing the disputed acres between the parties, but we find no justification for such a claim in the evidence, and there was no error in the instruction.

Several other instructions are complained of, but we think that they have received the approval of this court in the cases of *Harris v. Harms,* and *State v. Ball, supra,* and *Knoll v. Randolph,* 3 Neb. (Unof.) 599.

In the case of *Halley v. Rosenfelt,* No. 19393 (not reported), the plaintiff succeeded in convincing the jury that the line of the reclamation survey was the true one, and that case was affirmed by this court in May, 1917, on the ground that the evidence was sufficient to support the verdict. An opposite result is reached in this case for the same reasons, but this situation may easily follow the application of the principle, so often announced by this and other courts, that the verdict of a jury will not be disturbed if sufficient evidence exists to support it.

In the case of *Speidel v. Monnich,* No. 21131 (not reported), affirmed by this court in October, 1920, involving a location of the west-quarter corner of section 6, the finding was in favor of the line contended for by the appellant, but that case involved a number of other questions which probably influenced the result. Neither of these cases, however, can be considered in determining the case at bar.

We have made a very painstaking and exhaustive search of the record and are unable to find any prejudicial error therein, and the judgment of the district court is

AFFIRMED.