(December 7, 1923.)

CATTINA E. SALA, Respondent, v. A. A. CRANE, O. R. WILLIAMS, and His Wife, MRS. O. R. WILLIAMS, Whose Christian Name is Unknown, G. W. YATES, and MRS. G. W. YATES, Whose Christian Name is Unknown, B. P. RICE and MRS. B. P. RICE, Whose Christian Name is Unknown, JIM PEDRO and CATHERINE PEDRO, His Wife, MARTIN BEDOGGIA and MRS. MARTIN BEDOGGIA, Whose Christian Name is Unknown, Appellants.

[221 Pac. 556.]

OFFICIAL PLAT — WHEN DISCREPANCY — MONUMENTED CORNERS CONTROL—LAW OF CASE—WHEN RULE DOES NOT APPLY.

    1. Where public lands conveyed by patent are described by legal subdivisions and lot numbers, "according to the official plat of the survey of said lands returned to the General Land Office by the Surveyor General," and there is a discrepancy in such plat between the lines subdividing the section and the government corners as they exist upon the ground and are shown on the plat and described in the accompanying field-notes, the monumented corners will prevail as against a hypothetical dividing line protracted by the draftsman upon the plat in the surveyor-general's office.

    2. The doctrine of the law of the case, as declared in a former appeal, will generally be followed, but this is not an inflexible rule, and where this court is a court of intermediate jurisdiction, its decision will be controlled by what it understands the holding of the court of ultimate conclusion to be under a like state of facts.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. R. N. Dunn, Judge.

Action to quiet title. From judgment for plaintiff, defendants appeal. *Reversed.*

John P. Gray and Fred D. Crane, for Appellants.

The lower court has found that the actual monuments in the field established at the time of the survey are still in

existence; those monuments are controlling. (Sec. 4804, U. S. Comp. Stats. 1916; Land Department Regulations of June 1, 1909, secs. 16–20, 25.)

"The construction given to a statute by those charged with the execution of it is entitled to most respectful consideration and ought not to be overruled without cogent reasons." (*Heath v. Wallace,* 138 U. S. 573, 11 Sup. Ct. 380, 34 L. ed. 1063.)

The supreme court of the United States has adopted the same view as the Land Department. (*St. Paul & P. R. R. Co. v. Schurmeier,* 7 Wall. (U. S.) 272, 19 L. ed. 74; *Higuera's Heirs v. United States,* 5 Wall. (U. S.) 827, 18 L. ed. 469; *Ayers v. Watson,* 137 U. S. 584, 11 Sup. Ct. 201, 34 L. ed. 803; *M'Ivers Lessee v. Walker,* 4 Wheat. (U. S.) 444, 4 L. ed. 611.)

The courts of the states recognize the same rule. (*State v. Ball,* 90 Neb. 307, 133 N. W. 412; *Galbraith v. Parker,* 17 Ariz. 369, 153 Pac. 283; *Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066; *Grand Cent. M. Co. v. Mammoth M. Co.,* 36 Utah, 364, 104 Pac. 573; *Harrington v. Boehmer,* 134 Cal. 196, 66 Pac. 214; *Keyser v. Sutherland,* 59 Mich. 455, 26 N. W. 865; *Woods v. West,* 40 Neb. 307, 58 N. W. 938; *Bullard v. Kempff,* 119 Cal. 9, 50 Pac. 780; *Seabrook v. Coos Bay Ice Co.,* 49 Or. 237, 89 Pac. 417; *Whiting v. Gardner,* 80 Cal. 78, 22 Pac. 71; *Foss v. Johnstone,* 158 Cal. 119, 110 Pac. 294; *Silver King Coalition Mines Co. v. Conkling M. Co.,* 255 U. S. 150, 41 Sup. Ct. 310, 65 L. ed. 561.)

With regard to the law of the case, the better rule, and that more in accord with justice, is, that though ordinarily a question considered and determined on the first appeal is deemed to be settled and not open to re-examination on a second appeal, it is not an inflexible rule, and if the prior decision is palpably erroneous it is competent for the court to correct it on the second appeal. (2 R. C. L., sec. 188; *City of Hastings v. Foxworthy,* 45 Neb. 676, 63 N. W. 955, 34 L. R. A. 321; *Missouri etc. Ry. Co. v. Merrill,* 65 Kan. 436, 93 Am. St. 287, 70 Pac. 358, 59 L. R. A. 711.)

Whatever the opinion of the court may have been at the former hearing, since that time the supreme court of the United States has decided the case of *Silver King Coalition Mines Co. v. Conkling M. Co., supra;* that decision should be followed in this court.

Cyrus Happy and W. B. McFarland, for Respondent.

The former decision is the law of this case from which there is no appeal. (*Lindsay v. People,* 1 Ida. 438; *Palmer v. Utah & N. Ry. Co.,* 2 Ida. 382, 16 Pac. 533; *Hall v. Blackman,* 9 Ida. 555, 75 Pac. 608; *Ryan v. Rogers,* 14 Ida. 309, 94 Pac. 427; *Olympia Mining Co. v. Kerns,* 15 Ida. 371, 97 Pac. 1031; *Gerber v. Nampa & Meridian Irr. Dist.,* 19 Ida. 765, 116 Pac. 104; *Beymer v. Monarch,* 23 Ida. 292, 129 Pac. 919; *City of Nampa v. Nampa & Meridian Irr. Dist.,* 23 Ida. 422, 131 Pac. 8; *Phelan v. San Francisco,* 20 Cal. 39; *Heinlin v. Martin,* 59 Cal. 181; *Leese v. Clark,* 20 Cal. 417.)

The survey and plat were at least sufficiently legal to enable the United States to convey to Cattina Sala what it offered in its plat to convey, and which is described in her patent in accordance with that plat. (*Gazzam v. Lessee of Phillips,* 61 U. S. (20 How.), 372, 15 L. ed. 958; *Sala v. Crane,* 31 Ida. 196, 170 Pac. 92.)

A patent issued by the United States for land to which it holds absolute title cannot be collaterally attacked. (*French v. Ryan,* 93 U. S. 169, 23 L. ed. 812; *Quinby v. Conlan,* 104 U. S. 418, 26 L. ed. 800; *Steel v. St. Louis Smelting Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. ed. 226.)

When a plat is made, accepted by the Land Department and filed in the proper offices of the Land Department, it not only becomes a public record of what it shows, but it is as monumental in its lines as is any other part of the survey; in fact, more so as to the subdivisions created thereby. (*Wilson v. Chicago Lumber & Timber Co.,* 143 Fed. 705, 74 C. C. A. 529; *Niles v. Cedar Paint Club,* 175 U. S. 300, 20 Sup. Ct. 124, 44 L. ed. 171; *Chapman & Co. v. St. Francis Levee Dist.,* 232 U. S. 197, 34 Sup. Ct. 297,

58 L. ed. 564; *Green v. United States,* 274 Fed. 145; *Wall v. Utah Copper Co.,* 277 Fed. 55.)

WILLIAM A. LEE, J.—This case involves a boundary line between the lands of appellant and respondent in Sec. 6, T. 47 N., R. 3 W., B. M.

The United States patented to respondent, with other lands, Lots 5 and 6, and to appellant, with other lands, Lot 4 in said section. The boundary line in dispute is the east and west line between Lots 4 and 5, which subdivisions comprise the west half of the northwest quarter of Sec. 6, Lot 5 being the southwest quarter of the northwest quarter of Sec. 6.

The section was officially surveyed in 1901. The survey began at the township corner between townships 47 and 48 north and ranges 3 and 4 west, being also the northwest corner of 6 and the northeast corner of 1 in the said respective townships. A stone was set to mark this township corner, and the survey ran thence south on a line between said townships, the west line of 6 being coterminous with the east line of 1. The official field-notes of this survey show that 40 chains south of this township and section corner the surveyor:

"Set a basalt stone, 18x15x5 ins., 12 ins. in the ground, for ¼ sec. cor., marked ¼ on W. face, from which

"A pine, 20 ins. diam., bears S. 89½° E., 161 links dist., marked ¼ S 6 B T.

"A pine, 18 ins. diam., bears N. 36½° W., 187 links dist., marked ¼ S 1 B T."

The quarter corner on the west line of Sec. 6, as established by the survey in the field, is thus marked by a stone monument and witness tree in place upon the ground, and its location 40 chains south of the northwest corner of the section and township is not controverted. The quarter quarter corner on this west line between Lots 4 and 5 is not marked.

The plat of the section prepared in the office of the surveyor-general shows the east-and-west half-section line pro-

tracted from the monumented corner on the east line of Sec. 6, which is equidistant from the northeast and southeast corners of the section, to a point on the west line 2.02 chains north of this west quarter corner monumented on the ground and described in the field-notes, and the boundary line between Lots 4 and 5 as intersecting the west line of the section at a point 17.98 chains south of the northwest corner of this section and township.

Appellant contends that the southwest corner of Lot 5 is at the stone monument located in the field as the west quarter corner of Sec. 6, and that the northwest corner of Lot 5 and the southwest corner of Lot 4 should be equidistant between the west quarter corner and the northwest corner of the section, or 20 chains from either of these monumented corners.

Respondent bases her right of recovery to the land in question upon the fact that the patent, after describing the lands patented to her as the SE.¼ of the NW.¼, the NE.¼ of the SW.¼, and Lots 5 and 6, in Sec. 6, contains the following: "According to the official plat of the survey of said lands returned to the General Land Office by the Surveyor-General," and that this qualifying clause means according to the boundary lines of the plat subdividing the section as such lines were protracted in the surveyor-general's office, and that the monumented corners, field-notes and all other landmarks appearing as a part of the description in the official plat must be governed solely by this protracted line in determining the true boundary between Lots 4 and 5.

The case was before this court on a former appeal (*Sala v. Crane,* 31 Ida. 191, 170 Pac. 92), wherein it is held that:

"Where a patent conveys land according to the official plat of the survey returned by the surveyor-general, the plat becomes an integral part of the description of the land."

The cause being reversed, a new trial was ordered and further testimony taken. The trial court made its findings in accordance with the foregoing facts, and as a conclusion of law therefrom held that:

"By reason of the decision of the Supreme Court (in the former appeal) this court is compelled to find and does find, that the southwest corner of said Lot 5 is 2.02 chains north of said quarter corner of said section, monumented by the survey and shown on the ground, and the northwest corner thereof is 17.98 chains south of the northwest corner of the township."

The court then entered judgment upon such findings and conclusions awarding to respondent the premises in controversy. From this judgment this appeal is taken, and presents for determination the question as to which of these two conflicting descriptions contained in the official plat shall control.

Sec. 4804, U. S. Comp. Stats. (sec. 2396, U. S. Rev. Stats., 8 Fed. Stats. Ann., 2d ed., p. 669), approved Feb. 11, 1805, is as follows:

"BOUNDARIES AND CONTENTS OF PUBLIC LANDS, HOW ASCERTAINED. The boundaries and contents of the several sections, half-sections and quarter-sections of the public lands shall be ascertained in conformity with the following principles:

"First. All the corners marked in the surveys, returned by the surveyor-general, shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate; and the corners of half and quarter sections, not marked on the surveys, shall be placed as nearly as possible equidistant from two corners which stand on the same line.

"Second. The boundary-lines, actually run and marked in the surveys returned by the surveyor-general, shall be established as the proper boundary lines of the sections, or subdivisions, for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary-lines which have not been actually run and marked shall be ascertained, by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite

corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the water-course, Indian boundary-line, or other external boundary of such fractional township.

"Third. Each section or subdivision of section, the contents whereof have been returned by the surveyor-general, shall be held and considered as containing the exact quantity expressed in such return; and the half-sections and quarter-sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one-half or one-fourth part, respectively, of the returned contents of the section of which they may make part."

The Land Department has construed this section, and in its Revised Rules of June 1, 1909, approved by the Secretary of the Interior, we find the following:

"2nd. That the original township, section and quarter section corners established by the government surveyor must stand as the true corners which they were intended to represent, whether the corners be in the place shown by the field notes or not.

"3rd. That the quarter quarter corners not established by the government surveyor shall be placed on the straight lines joining the section and quarter section corners, and midway between them, except on the last half-mile of the section lines closing on the north and west boundaries of the township or on other lines between fractional sections.

"4th. That all subdivisional lines of a section running between corners established in the original survey of a township must be straight lines running from the proper corner in one section line to its opposite corresponding corner in the opposite section line. (See secs. 75 to 82.)"

"All lines are supposed to be actually surveyed, and the intention of the grant is to convey the land according to the actual survey; consequently, distances must be lengthened or shortened and courses varied so as to conform to the natural

objects called for." (*McIver's Lessees v. Walker,* 4 Wheat. (U. S.) 444, 4 L. ed. 611.)

"Provision was made by the act of Feb. 11, 1805 (now U. S. Comp. Stats., sec. 4804) that townships should be 'subdivided into sections, by running straight lines from the mile corners, marked as therein required, to the opposite corresponding corners, and by marking on each of the said lines intermediate corners, as nearly as possible equidistant from the corners of the sections on the same.' Corners thus marked in the surveys, are to be regarded as the proper corners of sections, and the provision is, that the corners of half and quarter sections, not actually run and marked on the surveys, shall be placed, as nearly as possible, equidistant from the two corners standing on the same line. . . . . Lines intended as boundaries, but which were not actually run and marked, must be ascertained by running straight lines from the established corners to the opposite corresponding corners." (*St. Paul & P. Ry. Co. v. Schurmier,* 7 Wall. (U. S.) 272, 19 L. ed. 74.)

"But ordinarily, surveys are so loosely made, and so liable to be inaccurate, especially when made in rough or uneven land or forests, that the courses and distances given in the instrument are regarded as more or less uncertain, and always give place, in questions of doubt or discrepancy, to known monuments and boundaries referred to as identifying the land." (*Higuera's Heirs v. United States,* 5 Wall. (U. S.) 827, 18 L. ed. 469.)

"In ascertaining the lines of land, the tracks of the surveyor, so far as discoverable on the ground with reasonable certainty, should be followed; and marked trees, designating a corner or a line on the ground, should control both courses and distances." (*Ayers v. Watson,* 137 U. S. 584, 11 Sup. Ct. 201, 34 L. ed. 803.)

To the same effect, see also *State v. Ball,* 90 Neb. 307, 133 N. W. 412; *Halley v. Harriman,* 106 Neb. 377, 183 N. W. 665; *Galbraith v. Parker,* 17 Ariz. 369, 153 Pac. 283.

In *Keyser v. Sutherland,* 59 Mich. 455, 26 N. W. 865, the court said:

"The quarter lines are not run upon the ground, but they exist, by law, the same as the section lines. When the township and section lines are run, and the corners marked according to law, the quarter-section lines are ascertained on the plat by protracting lines across the section north and south and east and west from the opposite quarter-section posts set in the exterior lines of the section by the government surveyor, and smaller subdivisions are protracted so as to make one-half and one-fourth of a quarter section."

The cases principally relied upon in support of respondent's contention are *Gazzam v. Lessee of Phillips,* 61 U. S. (20 How.), 372, 15 L. ed. 958, and *Cragin v. Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. ed. 566. *Gazzam v. Phillips* expressly disapproves the holding in *Lessee of Brown v. Clements,* 3 How. (U. S.) 650, 11 L. ed. 767. The parties in both cases rest their claims upon the patents issued to James Ethridge and William D. Stone, respectively. A review of all the facts and questions of law considered in these cases cannot be made within the proper limits of a judicial opinion. The Gazzam-Phillips case, when considered in connection with the holding in *Brown v. Clements,* which it overrules, appears to lend support to respondent's contention, although in a number of essentials we think that both *Gazzam v. Phillips* and *Cragin v. Powell* present a question materially different from the case at bar. The Gazzam case was one in which the patent expressly stated the acreage conveyed and the precise compensation to be paid to the government for such acreage. The description in the Ethridge patent was "for the southwest quarter of section 22 . . . . containing ninety-two acres and sixty-seven hundredths of an acre, according to the official plat of the survey, etc." The description in the Stone patent was "for the south subdivision of fractional section 22 . . . . containing one hundred ten acres and fifty-one hundredths of an acre, according to the official plat of the survey, etc."

In the case at bar, the exterior lines of Sec. 6, as run by the survey, are eighty chains in length, except that the

northeast and southwest quarter quarters are fractional because of adjoining lakes. The section lines are each parallel to their opposite lines, and the northwest quarter of this section, in which the land in controversy is situated, when its area is computed from the monumented corners, contains the government allotment of 160 acres, each of the exterior lines being forty chains in length. A number of the subdivisions in the south half of the section, as shown by the plat, contain an excess acreage, and it appears from the plat that the only reason the two section corners, that is, the northeast and southwest, were not monumented on the ground and now shown to be in place, a mile from each opposite section corner, is because of the bodies of water mentioned.

In *Chapman & Dewey Lbr. Co. v. St. Francis Levee Dist.,* 232 U. S. 186, 37 Sup. Ct. 297, 58 L. ed. 564, at page 196 of the official reports, it is held that any part of the description in the plat must be read in the light of the others, for it is a familiar rule that where lands are patented according to such a plat, the notes, lines, landmarks and other particulars appearing thereon become as much a part of the patent and are as much to be considered in determining what it is intended to include as if they were set forth in the patent, citing *Cragin v. Powell, supra,* and *Jeffries v. East Omaha Land Co.,* 134 U. S. 178, 10 Sup. Ct. 518, 33 L. ed. 872.

We therefore conclude, and so hold, that the monumented corners shown on the plat should prevail as against this dividing line protracted by the draftsman to a point 2.02 chains north of the quarter corner, both being shown by and being a part of the official plat.

Respondent earnestly contends that the decision in *Sala v. Crane, supra,* is the law of this case, and must control this decision. The doctrine of the law of the case has generally been followed by this court. However, where this court is not a court of final conclusion in the determination of the question presented, and error may be taken to the federal supreme court, the rule of the law of the case contended

for is not applicable. (*A. B. Moss & Bro. v. Ramey*, 25 Ida. 1, 136 Pac. 608.) All courts of intermediate jurisdiction are controlled and bound by the decisions of courts of ultimate resort. (*State v. Moore*, 36 Ida. 565, 212 Pac. 349.) It is settled that Congress has plenary power to dispose of public lands, and that the federal supreme court is the court of final resort with regard to questions of the character here presented. (*United States v. Gratiot*, 14 Pet. (U. S.) 526, 10 L. ed. 573; *California v. Deseret Water, Oil & Irr. Co.*, 243 U. S. 415, 37 Sup. Ct. 394, 61 L. ed. 821; *Ruddy v. Rossi*, 248 U. S. 104, 8 A. L. R. 843, 39 Sup. Ct. 46, 63 L. ed. 148.) The rule of the law of the case is not an inflexible rule. (*City of Hastings v. Foxworthy*, 45 Neb. 676, 63 N. W. 955, 34 L. R. A. 321; *M. K. & T. Ry. Co. v. Merrill*, 65 Kan. 436, 93 Am. St. 287, 70 Pac. 358, 59 L. R. A. 711; 2 R. C. L., sec. 188, p. 226, "Appeal and Error.")

And also, where the facts on the second appeal are materially different from the facts in the case previously passed upon, the rule may not always be applicable. The county surveyor, Phinney, who was the only witness who testified at the first trial, stated that the east quarter corner of said Sec. 1 is a stone, while the west quarter corner of said Sec. 6 was not established on the ground, and that he established it 2.02 chains north of the east quarter corner of Sec. 1, because of instructions from the surveyor-general. Upon the second trial, the one from which this appeal is taken, the same witness testified in effect that the west quarter corner of Sec. 6, as monumented on the ground, is identical with the east quarter corner of Sec. 1, and the two engineers, Eddelblute and Edwards, who were not witnesses at the first trial, testified positively upon the second hearing that the quarter corner on the west line of Sec. 6 was monumented on the ground and at the place shown by the official plat, and the trial court so found.

It is true that upon a rehearing in the former appeal, the opinion appears to assume that the west quarter corner of Sec. 6 was monumented on the ground, but the testimony at that trial does not show this to have been the fact, while

upon the second hearing it is conclusively shown by all the engineers who were called upon to testify. There being this apparent conflict in the official plat itself, and there being no controversy about the location of this quarter corner of Sec. 6 as it was monumented in the field and has ever since been plainly visible, under the foregoing rules and the federal statute above referred to, and the construction and application given to it by the land department in its regulations above referred to, which appear to be in harmony with the decisions of the federal supreme court, particularly as stated in the excerpt from *St. P. & P. Ry. Co. v. Schurmier, supra,* we feel compelled to hold that the proper interpretation of the descriptive clause contained in the deed requires the true quarter corner on the west line of Sec. 6 to be as monumented on the ground, and the quarter quarter corner between Lots 4 and 5 to be equidistant between the quarter corner and the northwest corner of the section.

The cause is reversed and remanded, with instructions to enter a judgment and decree according to the views herein expressed. Appellant to recover the costs of this appeal.

Budge, C. J., and McCarthy and William E. Lee, JJ., concur.