996 P.2d 813

Richard K. ROBBINS and Nancy P. Robbins, Trustees of the Robbins Trust, U/A/D 4–8–86; Gerard F. O'Connor, an individual, Plaintiffs–Appellants,

v.

The COUNTY OF BLAINE, a political subdivision of the State of Idaho, Defendant–Respondent.

No. 24768.

Supreme Court of Idaho, Boise, November 1999 Term.

March 17, 2000.

which two roads cross. This property was originally surveyed and included in a survey map which was filed with, and accepted by, the Surveyor General on October 27, 1892. This map identifies the quarter section lines created as a result of the official survey. Following the completion of the federal plat, three separate Patent Deeds were issued for the property now at issue. These deeds identified the property being conveyed by reference to the quarter quarter sections established by the federal survey. Two of the patents contained four quarter quarter sections (or 160 acres) each, and the third consisted of one quarter quarter section. All three of the original patent deeds then came under common ownership in 1950. The property was transferred as a single parcel several times and was eventually conveyed in that manner to Robbins/O'Connor in 1990. Through an amended warranty deed to Robbins/O'Connor in 1993, the parties attempted to indicate that six separate parcels were being deeded of record.

Hawley Troxell Ennis & Hawley, Ketchum, for appellants. Edward A. Lawson argued.

Blaine County Prosecuting Attorney, Hailey, for respondent. Douglas A. Werth argued.

TROUT, Chief Justice.

Appellants, Richard and Nancy Robbins and Gerard O'Connor (Robbins/O'Connor), appeal from the district court's grant of summary judgment to Blaine County. Robbins/O'Connor argue that the district judge erroneously determined that their property constituted an unplatted, contiguous tract of land that was therefore subject to the Blaine County Subdivision Ordinance. Robbins/O'Connor seek to have the district judge's decision overturned and to have summary judgment granted in their favor.

I.

**FACTUAL AND PROCEDURAL BACKGROUND**

Robbins/O'Connor own 360 acres of real property in Blaine County, Idaho, through

On November 23, 1993, Linda Haavik (Haavik), the Blaine County Planning and Zoning Administrator, sent a letter to Robbins/O'Connor which set forth her administrative decision that the 360 acres constituted one parcel of property. An appeal was filed from this administrative decision. However, after Haavik suggested that pursuit of an application before the Blaine County Planning and Zoning Commission might render her decision moot, there was no further pursuit of the appeal.

On May 12, 1994, the Robbinses filed a complaint for partition of real property against O'Connor, seeking partition of the 360 acres. On July 11, 1994, a default judgment was entered which divided the 360 acres between the Robbinses and O'Connor. Blaine County was not a party to the action.

On October 5, 1995, Robbins/O'Connor filed an action for declaratory judgment seeking a declaratory judgment that the 360 acres consisted of six separate parcels under the Blaine County ordinance. After the parties engaged in discovery, the matter came before the district judge on the Rob-

bins/O'Connor motion for summary judgment. After briefing and a hearing, the district judge denied summary judgment to Robbins/O'Connor and instead granted summary judgment to Blaine County. Although the district judge granted summary judgment to Blaine County on the issue of whether the Robbins/O'Connor land fell within the provisions of the Blaine County subdivision ordinance, the court expressly reserved judgment on the issue of whether Robbins/O'Connor had exhausted their administrative remedies and on Blaine County's motion to amend its answer. However, the district judge then entered a 54(b) certificate finding that there was no just reason for delay in entry of final judgment. This appeal then followed.

## II.

### STANDARD OF REVIEW

On appeal from an order granting a party's motion for summary judgment, this Court's standard of review is the same standard employed by the trial court when originally ruling on the motion. *See Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *see also Smith*, 128 Idaho at 718, 918 P.2d at 587; *City of Chubbuck*, 127 Idaho at 200, 899 P.2d at 413. When, as in this case, summary judgment has been granted to the non-moving party, this Court liberally construes the record in favor of the party against whom summary judgment was entered. *See Allen v. Blaine County*, 131 Idaho 138, 141, 953 P.2d 578, 581 (1998).

## III.

### DISCUSSION

Robbins/O'Connor argue that the district judge erred in granting summary judgment

to Blaine County on three different grounds.[1] First, Robbins/O'Connor contend that the district judge erred when he held that the federal survey of public lands which divided federal land into quarter quarter sections did not constitute a valid plat of the Robbins/O'Connor property. Secondly, Robbins/O'Connor argue that even if the federal survey map did not constitute a valid plat of the property, the fact that the land was originally conveyed in three separate patent deeds mandates a finding that the property consists of at least three separate parcels. Finally, Robbins/O'Connor contend that the district judge erred in finding that the Robbins/O'Connor property was contiguous for purposes of the Blaine County Subdivision Ordinance, despite the presence of the two roads which run through the property. We will address each argument in turn.

### A. The Federal Survey of Public Lands Did Not Operate as a Subdivision of the Robbins/O'Connor Property.

The federal rectangular survey system was first established by Congress in 1785. Originally, Congress ordered the mapping of federal land into townships of six miles square. Then, in 1832, the federal survey statute was amended to provide for the mapping of land into quarter quarter sections of 40 acres each. Robbins/O'Connor contend that this division of land into quarter quarter sections created, in effect, a subdivision of the public lands into 40–acre lots. Therefore, in their view, the federal survey establishes the boundaries of lots within the Robbins/O'Connor property.

In support of their argument, Robbins/O'Connor cite to Idaho cases, as well as cases from other states, which have held that the quarter section and quarter quarter section lines established by the federal survey constitute the legal boundaries of land conveyed according to the federal plats estab-

---

1. At oral argument, Robbins/O'Connor attempted to argue that the Blaine County ordinance somehow violates the enabling authority provided in the Local Land Use Planning Act, I.C. §§ 67–6501 to 67–6537. However, Robbins/O'Connor failed to raise this issue at any time prior to oral

argument. We have previously held that issues raised for the first time at oral argument are not properly before the Court. *See, e.g., Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 198, 879 P.2d 1126, 1131 (1994). Therefore, we will not address this argument on appeal.

lished by the survey and recorded in the General Land Office. For example, in *Sala v. Crane*, 38 Idaho 402, 221 P. 556 (1923), this Court recognized the "familiar rule that where lands are patented according to such a plat, the notes, lines, landmarks and other particulars appearing thereon become as much a part of the patent and are as much to be considered in determining what it is intended to include as if they were set forth in the patent." *Id.* at 411, 221 P. at 559. Similarly, in *Johnson v. Johnson*, 14 Idaho 561, 95 P. 499 (1908), the Court noted that the boundary lines for the lots at issue in the case "are not set out in the patent, but reference is made to the official plat of the survey of said lands for identification of the land granted, thereby adopting the plat as a part of the instrument." *Id.* at 568, 95 P. at 501. However, neither of these cases addressed the issue of whether the federal plats created legal subdivisions of land. Rather, each case dealt with the question of the effect of the federal plat in establishing the boundaries of land conveyed in reference to the federal plat, usually in the context of a boundary dispute. *See, e.g., Sala*, 38 Idaho at 407, 221 P. at 556–57; *Johnson*, 14 Idaho at 568, 95 P. at 501; *Vaught v. McClymond*, 116 Mont. 542, 155 P.2d 612 (1945). The rule developed from these cases is simply that, when determining what exactly was conveyed by a federal patent, the federal plat, its notes, and descriptions are all incorporated into the patent and control the description of the property conveyed.

Additionally, the Robbins/O'Connor argument that the conveyance of land in reference to the federal survey map established the boundaries for the lots in their land ignores the way in which the land was conveyed to the original owners. We have previously held that, where possible, "the court should give effect to the intention of the parties to a deed.... Where the language of a deed is plain and unambiguous the intention of the parties must be determined from the deed itself...." *Hall v. Hall*, 116 Idaho 483, 484, 777 P.2d 255, 256 (1989); *see also Bliss v. Bliss*, 127 Idaho 170, 174, 898 P.2d 1081, 1085 (1995). According to the original

patent deeds, the land conveyed by those patents was described in reference to the quarter and quarter quarter sections established by the federal survey. However, each deed also clearly states that a single tract of land was conveyed, not separate 40–acre lots as Robbins/O'Connor contend. For example, the original patent deed to Frank H. Knight states that the land being conveyed is the "northwest quarter of the southwest quarter of Section twenty-nine and the east half of the northeast quarter and the northeast quarter of the southeast quarter of section 30 ... containing one hundred sixty acres...." The language "containing one hundred and sixty acres" alone indicates that the description contained in the deed was of one parcel, not three. However, the deed also states that "there is, therefore, granted by the UNITED STATES unto the said claimant the *tract of Land* above described ...." (emphasis added). This language even more clearly indicates that only one parcel is being conveyed, not the three or four advocated by Robbins/O'Connor. The exact same language is found in the patent deed to James Butch.[2] Therefore, under the clear and unambiguous language of the patent deeds, only one parcel of land was conveyed by each patent deed.

Next, Robbins/O'Connor argue that a legal subdivision was created by the federal survey system because the Idaho legislature expressly ratified existing plats when it passed Sections 91 to 103 of the General Laws in 1893. These sections were the first laws passed by the Idaho legislature which expressly required plats to be made prior to the subdivision of any property into three or more parcels. *See* Act of March 4, 1893, 1893 Idaho Sess. Laws 97, 126 (providing for the organization, government and powers of cities and villages). Section 102 states that:

> None of the provisions of this chapter shall be construed to require replatting in any case where plats have been made and recorded in pursuance of any law heretofore in force; and all plats heretofore filed for record, and not subsequently vacated,

---

**2.** The third patent deed conveyed only a single quarter quarter section to Irma Knight, therefore there is no question as to how many parcels of land were conveyed in that patent deed.

are hereby declared valid, notwithstanding, irregularities and omissions in manner of form of acknowledgment on certificate; but the provisions of this section shall not affect any action or proceeding now pending.

*See id.* at 129.[3] According to Robbins/O'Connor, because the federal plat containing the Robbins/O'Connor property was created pursuant to the federal law in force at the time Section 102 was adopted, Section 102 operates expressly to declare the federal plat to be a valid subdivision plat. Consequently, the Robbins/O'Connor property is already subdivided and is not subject to the Blaine County Subdivision Ordinance.

In contrast to Robbins/O'Connor, Blaine County argues that Section 102 did not turn the federal survey plat into a valid subdivision plat. Blaine County argues that the federal survey plat was not validated by Section 102 because the federal survey did not create a "plat" within the meaning of that word as used in Section 102 and its successors. According to Section 91 of the Act which originally created the requirement of plats for subdivisions of land, a "plat" required "references to known or permanent monuments ... accurately describ[ing] *all* the subdivisions of such tract or parcel of land, numbering the same by progressive numbers, and giving the dimensions and length and breadth thereof, and the breadth and the courses of all streets as established therein." *See* Act of March 4, 1893, 1893 Idaho Sess. Laws, 97, 126 (emphasis added). Therefore, it appears that the Act contemplated "plats" as specifically identifying the lots created by the subdivision. However, the federal survey map does not identify all of the lots created by the "subdivision" of the public lands. In fact, it does not identify, at least by number, any of the lots created by the "subdivision" of federal land. Rather, the federal survey map divides each township into 36 sections of 640 acres each. These sections are numbered progressively. Additionally, the federal survey map shows the quarter section lines, although the quarter sections are not numbered. Finally, the quarter quarter sections are not even depict-ed on the federal survey map, let alone progressively numbered. Consequently, it is difficult to see how this federal survey map could qualify as a "plat" within the meaning contemplated by the Idaho legislature in the original Act.

Despite these clear differences, Robbins/O'Connor argue that Section 102 must have been intended to validate the federal survey maps as subdivision plats because the only law in force regarding plats prior to the enactment of Section 102 was federal law. However, this argument ignores the fact that there were other types of plats in existence in Idaho in 1893. As Blaine County correctly points out, several towns had created plats pursuant to the federal Townsite Act. This Act provided for the granting of federal lands to existing townsites in accordance with plats created within those townsites. According to two early Idaho cases, *Thompson v. Holbrook*, 1 Idaho 609 (1876) and *Greathouse v. Heed*, 1 Idaho 482 (1873), these townsite plats included specific descriptions of blocks and lots created by the plats. Therefore, it is more likely that these townsite plats were the types of plats intended to be validated by Section 102, not the more general federal survey maps.

In support of their argument that Section 102 was intended to validate the federal survey maps as subdivision plats, Robbins/O'Connor rely on an earlier case from this Court, *Worley Highway District v. Yacht Club*, 116 Idaho 219, 775 P.2d 111 (1989). In that case, the issue was whether a sixty-foot strip of land designated as a road on the federal plat constituted a valid dedication of the road to the public. The Court held that the designation of a road on the federal plat constituted a valid common law dedication because the offer was made at the time the plat was filed and the public accepted the offer when it purchased land pursuant to the plat. *See id.* at 225, 775 P.2d at 117. Although not necessary to the holding of the case, we also addressed the question of whether a valid statutory dedication had occurred, noting that the trial court had determined that the federal plat filed with the General Land Office in Boise constituted a

---

3. This section has remained largely unchanged and is now codified as I.C. § 50–1315 (1994).

"valid statutory plat" because the plat had been made in accordance with the federal law then in force and was therefore expressly validated under I.C. § 49–2213 (the precursor to I.C. § 50–1315). While we accepted this finding for the purpose of the statutory dedication discussion, we also noted that the district judge's determination had not been appealed and thus we did not actually address the correctness of the district judge's decision. *See id.* at 223, 775 P.2d at 115. Therefore, this case is not binding precedent for the issue presented by this appeal.

In addition to being dicta, our discussion in *Worley Highway District* also dealt with a federal plat somewhat different than the survey map involved in this case. In *Worley Highway District,* the federal government had abandoned a military reserve and prepared written instructions for the land in the reserve to be platted in order to dispose of the property. The reserve was divided into two parcels by the Spokane River. The instructions as to the platting of the parcel on the east side of the river were very specific as to the creation of lots and laying out streets. The instructions for the west side of the river (where the property at issue was located) were less specific but still required that the plat create tracts of not more than 40 acres. *See Worley Highway Dist.,* 116 Idaho at 221, 775 P.2d at 113. Therefore, the plat of the abandoned military reserve appears to have been much more specific than the general federal survey maps at issue in this case. Consequently, as with the townsite plats, this type of plat is probably what the Idaho legislature had in mind when it adopted Section 102.

Finally, there is also clear case law in Idaho that records of survey are not synonymous with plats. In *State v. Bilbao,* 130 Idaho 500, 943 P.2d 926 (1997), the question presented was whether a properly filed record of survey constituted a "subdivision" of land. We noted that, unlike a subdivision plat, "[a] record of survey is not intended to serve as evidence or notice that a landowner is seeking to partition into lots one of his tracts of land." *Id.* at 502, 943 P.2d at 928; *see also* I.C. § 55–1901 to –1904 (1994). Indeed, "[n]ot only does the recording of a plat

deed to the public rights of way and common areas, but it also serves to create legally-recognized lots within the subdivision. The mere filing of a land survey carries with it no such consequences." *Bilbao,* 130 Idaho at 502, 943 P.2d at 928 (citations omitted). While this case did not deal with a federal survey map, it nonetheless establishes that survey maps and subdivision plats are distinct instruments which serve different purposes.

Therefore, based on the foregoing discussion, we affirm the district judge's decision that the federal survey system did not constitute a legal subdivision of the Robbins/O'Connor land.

## B. The Robbins/O'Connor Property Did Not Consist of Three Separate Parcels Based on the Patent Deeds of 1908, 1927, and 1948.

While Robbins/O'Connor argue that each of the three patent deeds issued were "legal subdivisions" of property which created separate parcels of land, there does not appear to be any question that three separate parcels were originally created by the three patent deeds.

The real question with regard to this issue is whether the three separate parcels merged into a single parcel of land at any time prior to the enactment of the Blaine County Subdivision Ordinance. Blaine County argues that at the time the Blaine County Subdivision Ordinance was adopted, the Ordinance defined the Robbins/O'Connor property as a single parcel of land based on the definition of an "original parcel of land" in the Ordinance. The Ordinance defines an "original parcel of land" as "an unplatted contiguous parcel of land, held in one (1) ownership and of record at the effective date of this ordinance." Blaine County Ordinance No. 77–6, § 5.41. Consequently, Blaine County asserts that because the three parcels of land are contiguous and under one ownership, they have merged into a single parcel of property.

Robbins/O'Connor argue that the parcels have not merged, even though they are held in one ownership. In support of their argument, Robbins/O'Connor urge us to follow the holding in *Lakeview Meadows Ranch v.*

*County of Santa Clara,* 27 Cal.App.4th 593, 32 Cal.Rptr.2d 615 (1994). In *Lakeview,* the California Court of Appeals faced a similar question of whether separate parcels of property had merged by virtue of their common ownership and that court held they did not. However, it is important to note that the California Court of Appeals answered this question by applying two different provisions of the California Code to the facts of that case. The first provision expressly stated that two or more contiguous parcels do not merge simply because of common ownership. The second stated that, absent an express statement of the grantor in the deed, the fact that a deed consolidates separate legal descriptions or real property contained in one or more deeds or patents into a subsequent single deed does not alter the separate and distinct nature of the property. Because neither the Idaho Code nor the Blaine County Subdivision Ordinance contains similar provisions, we decline to adopt the holding of the California court.

Additionally, Robbins/O'Connor rely on a Kansas Supreme Court decision in *Luthi v. Evans,* 223 Kan. 622, 576 P.2d 1064 (1978). In *Luthi,* the Kansas court held that "a single instrument ... may convey separate tracts by specific description and by general description capable of being made specific, where the clear intent of the language used is to do so." *See id.* at 1068. Robbins/O'Connor argue that because each of the deeds (after common ownership occurred) evidenced a clear intent to convey separate parcels of property in a single instrument, the adoption of this rule would require a finding that their property consists of at least the three parcels created by the original patent deeds. However, a close inspection of the deeds in this case does not support Robbins/O'Connor's argument. In the warranty deed from Frank and Irma Knight (the first common owners) to the Struthers, the property conveyed is described as follows:

> The South Half of the Southwest Quarter (S1/2SW1/4), the West Half of the Southeast Quarter (W1/2SE1/4), and the Northwest Quarter of the Southwest Quarter (NW1/4SW1/4) of Section Twenty–Nine (29); and the East Half of the Northeast Quarter (E1/2NE1/4), the Northeast Quar-ter of the Southeast Quarter (NE1/4SE1/4) of Section Thirty (30); and the Northeast Quarter of the Northwest Quarter (NE1/4NW1/4) of Section 32....

Because we have previously held that the federal survey map did not create legal subdivisions, it is difficult to see how this description constitutes a clear intent to convey the three original patented parcels of property as separate parcels, but in a single deed. First of all, the property is not described in terms of separate parcels; that is the deed does not say "Parcel One consisting of ..., Parcel Two consisting of ..." or other similar language. Secondly, the property description quoted above does not track the three property descriptions from the original patents. Instead, the deed takes the three original descriptions, combines them, and then describes the entire property by Section, rather than by separate parcel. Therefore, even under the holding of the Kansas court, the Robbins/O'Connor argument must still fail. Since the rule requires a clear statement in the deed and no such statement exists in the deeds at issue, Robbins/O'Connor have still failed to raise a genuine issue as to whether the deed was intended to convey a single parcel or the three original parcels. Additionally, because the subsequent deeds from the Struthers to the Schoddes and the Schoddes to Robbins/O'Connor (at least as to the original deed, rather than the amended deed) all contain the exact same description, it is clear that a single parcel of land consisting of 360 acres has been passed from the Knights to Robbins/O'Connor. Therefore, the district judge did not err in finding that the three separate parcels originally created by the patent deeds have merged into a single parcel of land.

## C. The Robbins/O'Connor Property is Contiguous.

Robbins/O'Connor argue that their property is not subject to the Blaine County Ordinance because the property does not fit within the definition of an "original parcel of land" as provided by Section 5.41 of the Ordinance because the two roads running through the property render it non-contiguous. Blaine County counters that the prop-

erty does fit within the definition because "contiguous" as used in the Ordinance means one ownership, not necessarily physically connected. Therefore, in the County's view, the property is still contiguous because all of the land is held under a single ownership. However, the definition of an "original parcel of land" shows that this cannot be a reasonable interpretation of that section of the Ordinance. As mentioned earlier, the full definition of an "original parcel of land" is "an unplatted contiguous parcel of land held in one (1) ownership and of record at the effective date of this ordinance." Blaine County Ordinance, No. 77–6, § 5.41. Therefore, if "contiguous" is interpreted to mean held in a single ownership, then a portion of that definition is rendered superfluous. It is a cardinal rule of statutory construction that all parts of a statute should be given meaning. *See Hoskins v. Howard,* 132 Idaho 311, 315, 971 P.2d 1135, 1139 (1998); *Petersen v. Franklin County,* 130 Idaho 176, 181, 938 P.2d 1214, 1219 (1997). Therefore, it is clear that "contiguous" as used in the definition of an "original parcel of land" cannot mean simply held under one ownership. Therefore, the question is what "contiguous" was intended to mean in this context.

This Court has previously noted that "[i]n construing a statute, the words of the statute must be given their plain, usual and ordinary meaning." *Sherwood v. Carter,* 119 Idaho 246, 254, 805 P.2d 452, 460 (1991); *see also Walker v. Hensley Trucking,* 107 Idaho 572, 691 P.2d 1187 (1984); *State v. Moore,* 111 Idaho 854, 727 P.2d 1282 (Ct.App.1986). Under the normal usage of the term contiguous, the property must consist of one continuous parcel of land, uninterrupted by other parcels with different ownership.

Robbins/O'Connor argue that their property cannot be contiguous because the roads effectively divide portions of the property and prevent them from "touching" each other. However, it is undisputed that the roads have never been deeded to any other party and that Robbins/O'Connor maintain fee ownership of the land underlying the roadway. Consequently, it is clear that there is no intervening fee-simple ownership which would separate one portion of the property from another. Therefore, we hold that the district judge properly concluded that the presence of the two roads on the Robbins/O'Connor property did not render the Robbins/O'Connor property non-contiguous.

### D. Attorney Fees on Appeal

In its brief, Blaine County requested attorney fees for this appeal pursuant to I.A.R. 41. However, I.A.R. 41 does not provide this Court with a basis for awarding attorney fees on appeal. Rather, this rule simply allows us to award fees if those fees are allowed by some other contractual or statutory authority. Additionally, Blaine County has failed to support its request for fees with any argument or other authority. We have repeatedly held that we will not consider issues on appeal "that are not supported by propositions of law, authority or argument." *Meisner v. Potlatch Corp.,* 131 Idaho 258, 263, 954 P.2d 676, 681 (1998). Therefore, we decline to award Blaine County fees on appeal.

### IV.

### CONCLUSION

For the foregoing reasons we affirm the district judge's grant of summary judgment to Blaine County. We award costs, but not attorney fees, to respondent.

Justices SCHROEDER, WALTERS, KIDWELL, and Justice Pro Tem WILPER, concur.